TIPLER-GROSSMAN LUMBER COMPANY *v.* FORREST CITY BOX COMPANY.

Opinion delivered April 4, 1921.

1. SALES—WAIVER OF PROMPT DELIVERY.—Though a contract for the sale of lumber specified lumber which had already been manufactured on the seller's mill yard, where the purchaser's attention was called to the fact that the seller was selling part of such lumber to another but the purchaser did not insist on the performance of the contract to the exclusion of other sales by the seller, it will be held to have waived the expeditious performance of the contract and consented to later delivery.

2. SALES—TIME OF PAYMENT—WAIVER.—In a buyer's action for failure to deliver lumber sold, in which the seller claimed that the buyer broke the contract by failure to pay for the lumber de-

livered, within the time it had agreed to pay, it was error to ignore the issue as to a waiver of prompt payment where there was evidence tending to prove such fact.

3. CONTRACTS — PERFORMANCE — INTERFERENCE BY GOVERNMENT.— While a party is generally bound by his contract to perform same, he is excused by lawful interruption or interference by the government of the place where the contract is to be performed.

4. CONTRACTS—NONPERFORMANCE — GOVERNMENTAL REQUISITION.—A requisition of the subject-matter of a contract by the government in time of war constitutes an excuse for nonperformance by the party who obeys the requisition.

5. CONTRACTS—GOVERNMENTAL INTERFERENCE—INSTRUCTION.—Where there was no evidence that the seller of lumber was required to furnish lumber under governmental order which interfered with his contract with the buyer, it was error to instruct the jury that the seller's delay in performance would be excused if caused by priority orders under government control or necessity for war purposes.

Appeal from St. Francis Circuit Court; *J. M. Jackson*. Judge; reversed.

*C. W. Norton,* for appellant.

1. Plaintiff was not entitled to any so-called government priority orders as having the effect of releasing defendant from its contracts or justifying the cancellation of its contracts by defendant. If Mr. Seaton had had direct and preferential orders from the government, that would not have authorized him to refuse to perform these contracts. 126 Ark. 46; 189 S. W. 654; Elliott on Contracts (2 ed.), §§ 1891, 1897; 148 Fed. 597; 244 *Id.* 250; 29 Ark. 330.

2. The court erred in its construction of the contract that the lumber was to be delivered to plaintiff (purchaser) when loaded on cars at shipping point, and the same error was made in its instructions. 200 S. W. 795. See, also, 111 Ark. 521; Ann. Cases 1916 A 1043; 128 Ark. 124; 193 S. W. 498; 88 Ark. 491-6; 83 *Id.* 551.

The two defenses—priority of government orders and a prior breach of contract by plaintiff by nonpayment—are without merit, either in fact or law.

*Mann & Mann,* for appellee.

1.   Appellant had willingly and cheerfully released appellee or acquiesced in the conduct of appellee in not shipping to appellant the lumber as ordered.   The consent of appellant to the disposition of the lumber relieves the court of the necessity of construing the contract as it relates to the place of delivery.   The authorities cited by appellant do not excuse from performance of the contract, and have no application where performance is waived.   3 A. L. R. 32.   The entire output of appellee was consumed by government orders.   9 A. L. R. 1510-15. Appellant can not complain of the instructions given.

2.   There was no breach of contract by appellee. This case is controlled by 88 Ark. 491, and the court properly instructed the jury.

McCulloch, C. J.   This is an action instituted by appellant against appellee to recover damages for alleged breach of contract for the sale and delivery of lumber.   Appellee denied that it had broken the contract, and alleged that the first breach was committed by appellant in failing to pay for lumber delivered under the contract. Appellee also filed a counterclaim for an unpaid balance in the sum of $323.14 for lumber sold and delivered. There was a trial of the issues before a jury, which resulted in a verdict in favor of appellee on its counterclaim for the recovery of three hundred and five dollars and seventy-two cents.

Appellant was engaged in the lumber business, with its principal place of business in the city of Green Bay, Wisconsin, and appellee was engaged in the lumber manufacturing business at Forrest City, Arkansas, and had a mill at Calion, Arkansas, where it manufactured rough lumber.

On March 10, 1917, and on March 17, 1917, appellee entered into contracts with appellant to sell the latter certain specified lumber then manufactured and situated at appellee's mill at Calion.   These contracts were in writing in the form of correspondence between the par-

ties. The first contract was for gum and plain white oak lumber, and the second was for quarter-sawed white oak. The last contract was, as we understand the testimony, substantially complied with, but the breach was committed in the performance of the first contract in regard to the gum lumber. It was specified in the writing that the lumber was to be delivered "Chicago, Illinois, rate of freight," and that the terms of payment were to be cash in sixty days with 2 per cent. discount on payments within ten days from date of invoice. Appellee made shipments of lumber to appellant on these contracts from time to time, beginning on April 28, 1917, and running down to November 14, 1917, when the last car was shipped. Payments were made by appellants on these shipments from time to time, the last payment being made on December 25, 1917, leaving a balance, which the jury found to be the sum specified in the verdict, three hundred and five dollars and seventy-two cents.

During the progress of these transactions a controversy arose between the parties as to when these payments should be made, whether strictly within sixty days after date of invoice, or, as contended by appellant, after the delivery of the lumber at point of destination and the receipt of freight bills, which appellant was to pay and deduct from the invoices. The controversy does not appear to have reached an acute stage or to a demand on the part of appellee that the payments be made more promptly on penalty of a forfeiture of the contract. The contracts specified lumber which had already been manufactured on the mill yard at Calion, but the evidence discloses the fact that the parties did not continue to treat the contract as applying solely to that lumber, but elected to treat it as applicable to any lumber of those specifications to be manufactured by appellee. The evidence discloses the fact that during the pendency of the contract appellee was selling lumber to Swift & Company of Kansas City, to be used as "shooks" or material for the making of packing cases used in the shipment of food products. This was brought to the attention of appellant,

who did not insist on the performance of the contract to the exclusion of other sales by appellee in the operation of its mill. This testimony, in other words, warranted a finding that appellant waived the expeditious performance of the contract and consented to later delivery.

The contention of appellant, however, is that appellee definitely broke the contract by the unequivocal refusal expressed in a letter of May 6, 1918, to continue to perform the contract. This letter was introduced in evidence, and it expresses a refusal on the part of appellee to furnish any more lumber under the contract. The refusal to do so was put on the ground that appellee was engaged in furnishing shooks to Swift & Company, and that it was in response to a governmental requirement for war purposes. At the conclusion of the letter, however, the subject of appellant's failure to pay the balance due for lumber shipped was referred to, but was not stated as a breach of the contract on the part of appellant. The letter concludes in the following language:

"While we are on this subject, we should like to remind you that we still hold open account on two cars shipped for you, which have never been settled for, notwithstanding these shipments are about as old as the order itself. There may be some specific and good reason for this delay, but we do not comprehend why the consequences should be ours, particularly so since we do not know where the stock is or who got it.

"We have no other stock which we can offer you; in fact, as stated, all our efforts are centered on supplying our factory, and we have shipped nothing excepting a certain amount of oak for government use."

The contention of appellee in the trial below was that at that time appellant had already broken the contract by failing to make the payments for lumber already shipped, and that appellee was justified in refusing to ship any more lumber.

There are numerous assignments of error with respect to the court's charge to the jury and its refusal to give certain instructions requested by appellant. We

deem it sufficient for disposal of the case here to discuss only those assignments which relate to the instructions given by the court at the request of appellee. The first three of these instructions read as follows:

"You are instructed that if you find from a fair preponderance of the evidence that the plaintiff, Tipler-Grossman Lumber Company failed and refused to pay for said lumber, or any part thereof, when the same fell due, which under the contract was within sixty days from the date fo shipment, then the defendant was not required to continue to furnish lumber to the plaintiff while any part of the account was due and unpaid, and your verdict would be for the defendant."

"You are instructed that if you find from the evidence that the plaintiff Tipler-Grossman Lumber Company failed or refused to pay for said lumber, or any part thereof, when such payment fell due, which under the contract within sixty days from the date of shipment, this would constitute a breach of the contract, and your verdict would be for the defendant.

"And if you further find from the testimony that there is due the defendant on its cross-complaint any sum from the plaintiff, your verdict will be for the defendant for such sum as you may find to be due according to the evidence."

"You are instructed that, under the terms of the contract involved in this suit, payments were to be made two per cent. discount if payment made within ten days of date of shipment or sixty days from date of shipment, so if you find that payments of any sum on any car was withheld after the same was due and request made for payment, this would constitute a breach of the contract, and the plaintiff could not recover, and your verdict should be for the defendant for the balance due it."

These instructions amounted to a peremptory direction to the jury to return a verdict in favor of appellee, for it was undisputed that appellant had failed to pay some of the invoices for lumber within sixty days after the date thereof. But the instructions ignored the issue

raised by the proof as to whether or not appellee waived the punctual payment within the time specified in the contracts. There is proof to the effect that there was necessary delay in ascertaining the amount of freight bills so as to deduct the same from the invoices, and in the correspondence between the parties appellee never at any time insisted that the contract would be forfeited unless payments be made within sixty days from the date of invoice, regardless of time of delivery or the ascertainment of the amount of freight.

Learned counsel refer especially to letters from appellee to appellant, dated, respectively, on October 22, 1917, and November 19, 1917, asking for payment of past due bills, but in neither of these letters was it insisted that there would be a forfeiture of the contract unless payment be promptly made. These letters were merely requests for payments, and, according to the undisputed proof, appellant continued to make partial payments from time to time up to December 25, 1917, and large sums were paid during that time without any objections on the part of appellee that the payments were not being made strictly in accordance with the terms of the contract. These instructions were erroneous in ignoring this issue, and they were in conflict with other instructions on this subject given at the instance of appellant.

The court also gave the following instruction, over the objection of appellant:

"You are instructed that if the delay by the defendant in shipping lumber to plaintiff was caused by priority orders under government control, or necessity for war purposes, such delay was not the fault of the defendant, and the priority orders were a legal excuse for such delay."

The language of this instruction is very obscure in leaving it to the jury to determine what would constitute "priority orders under government control, or necessity for war purposes," and without furnishing the jury any guide as to the law on the subject. The general rule of law is that a party is bound by his contract to perform,

and that he must perform or pay damages upon his failure to do so, but there are exceptions to this general rule, one of which is that performance is excused by lawful interruption or interference by the government of the place where the contract is to be performed. A requisition of the subject-matter of the contract by the government in time of war comes within the exceptions to the general rule, and constitutes an excuse for nonperformance by the party who obeys the requisition.

The Congress of the United States enacted a statute, which was approved June 3, 1916, known as the National Defense Act (Compiled Statutes, section 3115 g), which empowered the President of the United States, acting through the head of any department of the government, "in addition to the present authorized methods of purchase or procurement, to place any order with any individual, firm, association, company, corporation, or organized manufacturing industry for such products or material as may be required, and which is of the nature and kind usually produced or capable of being produced by such individual, firm, etc." The act also provides that compliance with all such orders shall be obligatory on any such individual, firm or corporation, and it prescribes a penalty for failing to comply with its provisions.

The case of *Roxford Knitting Co.* v. *Moore & Tierney*, 265 Fed. 177, is a leading case on the construction of this statute, and the Supreme Court of the United States refused a writ of certiorari to carry the case up for further review. The court construed the statute not to mean that "all contracts made by the government in a period of national emergency are to have precedence over civilian contracts," but that where material is furnished under the form of a voluntary contract with the government it will be held to be a requisition under the statutes if under the circumstances it appeared that the contract was executed merely as a form of obedience to governmental orders. To quote the exact language the court said: "That the entire surrounding circum-

stances must be considered to determine whether the formal contract entered into was a voluntary agreement covering the whole matter, or whether it was a mere settlement of details after the manufacturer had been directed to furnish certain material. And it affirmatively appears that the officer in charge of the purchase of supplies for the navy thought he was entitled to use and did use the contract form in cases where the parties on both sides reached an agreement with regard to the price of material.''

And again the court said: ''And when a manufacturer is given to understand that he is required to supply certain goods to the government of the United States, and is told that he has no option to decline to comply, we are satisfied that as to those goods an 'order' has been placed or received, within the spirit and intent and the letter of the statute, whether the authoritative direction is written or oral, and notwithstanding the fact that the parties actually come to an agreement in what has the form of a contract.''

There is no evidence in this case that appellee was required to furnish material under a governmental order, written or verbal, which caused interference with the performance of his contract with appellant. In appellee's correspondence with appellant and in the testimony of appellee's manager on the trial of the case below, general statements were made that they were furnishing their lumber under government order; but when the witness was interrogated specifically as to the form of the transaction he was unable to make any statement on the subject, except that appellee furnished shooks to Swift & Company, of Kansas City to use in packing food products for transportation for the government. This testimony is at most but hearsay, and does not even establish the fact that Swift & Company were operating under a requisition from the government or that appellee was acting under such a requisition, either directly or indirectly. The instruction was therefore entirely with-

out any evidence to support it, and should not have been given.

There was sufficient evidence to warrant a submission to the jury of appellant's charge against appellee of having broken the contract without justification, and this issue should have been submitted to the jury free from objectionable instructions.

The judgment is therefore reversed, and the cause is remanded for a new trial.