SCOTT *v.* BROWN.

Opinion delivered October 29, 1923.

1. JUDGMENT—COLLATERAL ATTACK.—Habeas corpus proceedings by a mother to secure custody of her child constitute a collateral attack upon the judgment of the juvenile court appointing a guardian of such child, where such appointment is pleaded as a defense.

2. GUARDIAN AND WARD—JURISDICTION OF PROBATE COURTS.—The jurisdiction of the probate court to appoint guardians for infants was not impaired by the statute authorizing the juvenile court in certain cases to appoint guardians for neglected or delinquent children.

3. INFANTS—JURISDICTION OF JUVENILE COURT TO APPOINT GUARDIAN. —Appointment of a guardian for a child of tender years by the juvenile court was void where it affirmatively appears that the condition of the child was not such as to bring it within the jurisdiction of the juvenile court; the jurisdiction of the probate court being otherwise unimpaired.

4. PARENT AND CHILD—CUSTODY OF CHILD.—On certiorari to review a decree in a habeas corpus proceeding awarding custody of a child to its mother, a mere statement in a pleading that the juvenile court had appointed a certain person guardian of the child is insufficient to afford a reason for continuing the child in his custody as against the rights of the child's mother, there being no showing that the juvenile court acquired jurisdiction to make such appointment.

5. COURTS—COMITY BETWEEN COURTS OF STATES.—Where, in habeas corpus by a mother to recover possession of her infant child, it appears that respondents had previously brought habeas corpus for possession of the child against the mother in the court of

another State, and, having secured possession by virtue of the writ, respondents, without awaiting the court's decision, brought the child to this State, and refused to obey the order of such court to return the child to its mother, such conduct was a fraud upon the jurisdiction of such court, and respondents will not be permitted to contest in this State for custody of the child.

Appeal from Crittenden Chancery Court; *Archer Wheatley*, Chancellor; affirmed.

*Wils Davis* and *W. B. Scott,* for appellants.

1. The juvenile court of Crittenden County had original, exclusive jurisdiction of this matter, and exercised it. 141 Ark. 213, 225.

2. The chancery court had no supervisory jurisdiction over the juvenile court, or over the custody of the child itself. Art. 7, § 14, Constitution 1874; 141 Ark. 227.

3. If the chancery court had jurisdiction, it was not bound by the former decision of the criminal court of Shelby County, Tennessee, and the facts in this case call for the exercise of the duty of the courts to consider first the welfare of the child, and its best interest in awarding its custody. 106 Ark. 205.

*Geo. E. Neuhardt* and *Clyde H. Koen,* for appellee.

1. So far as the controversy between Mrs. Scott and Mrs. Brown is concerned, the former is concluded by the decision in the habeas corpus proceeding in the Shelby County Criminal Court. It is *res judicata.* 211 Ill. 519; 112 Ind. 183; 165 Ind. 332; 75 Kans. 462; 165 Mich. 61; 99 Mo. 484; 26 N. D. 23; 38 Okla. 751; 57 W. Va. 520.

2. Taking the child out of the jurisdiction of the Tennessee court and bringing it into this State, after Mrs. Scott obtained possession of the child by virtue of the writ of habeas corpus, and refusing to return it after the order to do so was made, constituted the crime of kidnapping. Kirby's Dig., §§ 1815-16; 6 Wyo. 203; 89 Cal. 144; 9 Canadian Crim. Cases, 158; 24 Cyc. 797 (B); *Id.* 799 (b); 43 Ohio St., 567; 24 Cyc. 801 (3); Shannon's Code (Tenn.) § 6465.

3.   The child was a citizen of Tennessee, unlawfully in Arkansas, and not a citizen thereof.   The question of jurisdiction of the chancery court was not properly raised in the lower court.   .Kirby's  Digest,  § 6120. There was no lawful guardian.   The appeal from the juvenile court's action in appointing a guardian · suspended all further action.   Kirby's Dig., § 1350.

4.   The paramount interest and welfare of the child is conceded, but, as between a parent and a stranger, the right of the parent to the custody is superior.   3 Mason (U. S.) 482; 4 Am. Rul. Cas. 892; 112 Ind. 183; 2 Am. Rul. Cas. 558;.24 Wash. 332.   Especially is this true where, as in this case, there is question as to the moral fitness of the parent to have custody of the child.   211 Ill., 519; Am. & Eng. Ann. Cas. p. 256; 99 Mo. 494; 37 Ark. 27; 4 Am. Rul. Cas. p. 884.

McCULLOCH, C. J.   This case involves the custody of Nellie Josephine Brown, a girl about ten years of age, the daughter of Mrs. Nellie Brown, the appellee, who resides in Memphis, Tennessee.

Mrs. Brown had five children, the little girl involved in this controversy being the youngest.   She placed this child in an orphans' asylum in Memphis, under an arrangement whereby she was to pay board for the child.

Appellants, John W. Scott and his wife, Ethel Rhodes Scott, reside in Crittenden County, Arkansas, and, being childless, they went to the orphans' asylum in Memphis to obtain a child, being attracted by an advertisement accompanied by pictures of children.   They selected the child in controversy, and it was represented to them that the child's parents were dead.   They took the child with them to their home in Crittenden County. About a month later Mrs. Brown learned that her child had been sent away, and she declined to abide by that disposition of the .child, and demanded and received it back.   After keeping the child about two months, she changed her mind and consented for the Scotts to take the child, and promised that she would not again take the

child away from them, but she declined to consent for them to adopt the child as their own. She exacted a promise from the Scotts that they would permit the child to visit her, and that she should be permitted to visit the child at the Scott home at reasonable times. The child was kept by the Scotts under this arrangement for nearly two years, and finally, on a visit to Memphis, they took the child with them, and, while stopping in a hotel there, Mrs. Brown took the child from the hotel and carried it away, and kept it for about two months, when Mrs. Scott sued out a writ of habeas corpus before one of the judges of the criminal court in Memphis to secure custody of the child. The writ was issued commanding the sheriff to take the child from the custody of Mrs. Brown and deliver it to the custody of Mrs. Scott, and the cause was set down for hearing two days later. The writ was served by the sheriff in accordance with its directions, and the custody of the child was thus changed from Mrs. Brown to Mrs. Scott, and the latter immediately brought the child away from Tennessee to her home in Crittenden County. Mrs. Scott did not return to Memphis on the day of trial, nor at any subsequent time. Her attorney appeared and secured repeated continuances of the hearing upon the writ of habeas corpus, and the court issued a citation for Mrs. Scott to appear or be adjudged in contempt. There was still no appearance, and finally the court dismissed the original petition, and directed that Mrs. Scott restore the custody of the child to Mrs. Brown. It appears that Mrs. Scott has never returned the child within the jurisdiction of the Tennessee courts since she secured the custody under the writ above mentioned.

Mrs. Brown instituted this action before the chancellor in Crittenden County, against the Scotts, and prayed for a writ of habeas corpus requiring the production of the child, and that its custody be awarded to her on a final hearing. The writ was issued, and, on a final hearing, the Scotts appeared, and they, together with Louis Barton, who claimed to be acting as guardian

of the child, filed an answer disputing the right of the appellee, Mrs. Brown, to the custody of the child.

It is alleged in the joint answer filed by the Scotts and Mr. Barton that the latter "is the lawful and duly constituted guardian of the minor mentioned in the petition, to-wit: Nellie Josephine Brown, appointed as such by the juvenile court of Crittenden County," and that the defendants, John W. Scott and Ethel Rhodes Scott, "are in custody of said minor child, above named, under and by authority of its legal guardian, Louis Barton."

The chancellor heard the cause upon the pleadings and upon the certified record of the proceedings in the habeas corpus hearing in the Tennessee court and on oral testimony adduced by both sides, and a decree was rendered awarding the custody of the child to the appellee, Mrs. Brown. The cause has been brought here for review on certiorari.

The first question to be considered is whether or not the appointment of Barton as guardian of the child was made by a court of competent jurisdiction, for this proceeding constitutes a collateral attack upon the judgment of the juvenile court making the appointment. The record of the juvenile court is not brought into the present record, and there is a mere allegation that Barton claims the custody of the child under his appointment. The rules of good pleading would require that the proceedings of the probate court be set forth, which was not done; but, conceding that an appointment is shown to have been made, the jurisdiction of the juvenile court does not appear in this record. On the contrary, the facts established by evidence adduced by appellants themselves defeated the jurisdiction of the court, for it affirmatively appears in this record that the condition of the child was not such as to bring it within the jurisdiction of the juvenile court.

The statutes of this State confer authority upon the county court to act as a juvenile court in the matter of control of delinquent and neglected children of certain

ages.   That statute was reviewed by this court in the case of *Ex parte King*, 141 Ark. 213, and it was held that this statute did not constitute an invasion of the jurisdiction of the probate court over the persons and estates of infants, but confined its jurisdiction to "jurisdiction over infants and their guardianship, so far as their conduct and condition might affect not only themselves but also the welfare of the communities in which they resided or might be found." It is clear therefore, under this interpretation of the statute, that the jurisdiction of the probate courts of this State in the appointment of guardians is unimpaired, and that, in order to confer jurisdiction upon the juvenile court, the status of the child must be such as is described in the statute which confers the jurisdiction.   We cannot assume, from the facts shown in the present record, that the court acquired jurisdiction to award custody of this child under a showing that it was a neglected or delinquent child.   We are of the opinion therefore that the mere statement in the pleading that Mr. Barton had been appointed by the juvenile court is not sufficient to afford a reason for continuing the child in his custody as against the rights of the child's mother.

There was much testimony adduced by the parties with respect to the condition of the respective claimants, that is, the Scotts and Mrs. Brown, the mother of the child.   The testimony is conflicting, but it is sufficient to show that all of the claimants entertained the tenderest affection for the child.   We do not, however, feel called upon to determine in this case the best interests of the child, or the rights, primarily, of the respective parties, for we are of the opinion that the conduct of appellees in bringing the child into the jurisdiction of the courts of this State constituted a violation of the jurisdiction of the Tennessee court and was, in effect, a legal fraud upon the jurisdiction of that court and also upon the courts of this State.

There is a conflict in the authorities as to whether the judgment of a foreign court with respect to the cus-

tody of a child is *res judicata,* without change in the condition (9 R. C. L. 477), but we find it unnecessary to decide that question in the present case. It is conceded that the Scotts obtained custody of the child from Mrs. Brown solely by virtue of the writ of habeas corpus issued by the Tennessee court, that she took the child out of the jurisdiction of that court, and, in violation of its order, refused to restore the custody of the child when so ordered by the court. By procuring the custody of the child in that manner and bringing it into the jurisdiction of this court, Mrs. Scott obtained an advantage which she should not, in a court of equity, be permitted to hold, for, as before stated, it constitutes a legal fraud upon the jurisdiction of the court. The question is controlled by the same equitable principle that a litigant cannot obtain an advantage of an adversary who is under the restraint of an order of court. *Little Rock Ry. & Elec. Co.* v. *North Little Rock,* 76 Ark. 48.

The question therefore as to what the best interests of the child are, and what the rights of the parties are with respect to the child, cannot be adjudicated until there is a restoration of the custody wrongfully obtained through the writ issued by the Tennessee court. A court of this State should not lend its aid to the enjoyment of a benefit secured in that way, and if the appellants desire to contest for the custody of the child they must do so after having restored it to the custody of the appellee, Mrs. Brown, within the jurisdiction of the Tennessee court, where the custody was wrongfully obtained.

Our conclusion therefore is that the decree of the chancellor is correct, so the writ of certiorari is quashed and the decree is affirmed.

Smith, J., not participating.