Jessie O. and Imogene ROBINS *v.*
ARKANSAS SOCIAL SERVICES

80-318                                   617 S.W. 2d 857

Supreme Court of Arkansas
Opinion delivered June 29, 1981

*Thomas J. Ginger* and *Thad M. Guyer*, of Central Arkansas Legal Services, for appellants.

*Breck Hopkins*, for appellee.

Robert H. Dudley, Justice. On June 17, 1980, the Social Services Division of the Department of Human Services of the State of Arkansas filed a petition in the Garland County Juvenile Court alleging that Shelia, David

and Marvin Robins had been abandoned by their parents, had no clothes other than those they were wearing, and were neglected children as defined by statute. The Juvenile Court of Garland County ordered that the children be temporarily placed in the custody of appellee Social Services. Shortly thereafter, appellants Jessie and Imogene Robins, the parents of the children, separated. Both appellants gave notice of appeal to circuit court and the attorney for appellants asked leave to withdraw as the attorney of record. He argued that his clients, because of their separation, presented him with a conflict of interest as each individually wanted custody. The appellants then filed a motion asking that each be appointed a separate attorney for their individual circuit court appeals. The circuit judge declined to allow the original attorney to withdraw and refused to appoint an attorney for each of the appellants.

Appellants argue that "Arkansas has not, by statute or case law, adopted a practice of holding bifurcated juvenile proceedings so that the jurisdictional adjudication of dependency is undertaken apart from a custody disposition." The circuit judge refused to order the juvenile court to hold a bifurcated hearing.

The circuit judge also ruled that the custody dispute between appellants, the mother and the father, had to be tried in chancery court; that the matter of temporary care of the children by the State was properly before the juvenile court; that the quantum of proof was a preponderance of the evidence; and that the decision of the juvenile court should be affirmed.

To resolve the issues presented it is necessary to discuss the jurisdiction of the various courts involved in the field of juvenile justice. In Arkansas the General Assembly does not have the power to create courts. Article 7, § 1, Constitution of Arkansas. *Jansen* v. *Blissenbach*, 214 Ark. 755, 217 S.W. 2d 849 (1949). After the Arkansas Constitution was adopted there was a nationwide movement to create juvenile courts. The first juvenile court was created in Illinois in 1899. Twelve years later, by Act 215 of 1911, the Arkansas General Assembly established the juvenile court as a segment of the

county court. That act was tested in the case of *Ex Parte King*, 141 Ark. 213, 217 S.W. 465 (1919) and this court very carefully pointed out that the General Assembly had not created a new court, but authorized the county court, a previously existing and constitutionally created court, to exercise the special subject matter jurisdiction set forth in the statute. This special subject matter jurisdiction was bottomed solely on the basis of a public guardianship over infants as a class. The opinion explains that the existing constitutionally created courts would retain their traditional jurisdiction. Chancery courts would retain general jurisdiction over the persons (custody) and property of minors; probate courts would retain general jurisdiction over guardianships of the persons and estates of minors and of adoptions; while circuit courts would retain civil and criminal jurisdiction over minors.

The purpose of the Juvenile Court Act is to allow the county court to exercise powers "some of which are clearly judicial and others are clearly administrative" to temporarily care for neglected or dependent children. "Certainly, no higher duty could devolve upon the government than to throw proper safeguards around that helpless class who have become dependent, neglected, abandoned and wayward, and who have thus become a charge upon the public, or wards of the State." *Ex Parte King*, supra.

Our cases have consistently followed the harmonious system described in *Ex Parte King*, supra. A few examples of that consistency follow. *Scott* v. *Brown*, 160 Ark. 489, 254 S.W. 1074 (1923) held that the juvenile court does not invade the jurisdiction of the probate court over the persons and estates of juveniles. In *Cude* v. *State*, 237 Ark. 927, 377 S.W. 2d 816 (1964), the juvenile code then in effect provided that the juvenile court could appoint a guardian, but we held that the appointment of a guardian over a minor was only within the jurisdiction of the probate court. *Lee* v. *Grubbs*, 269 Ark. 205, 599 S.W. 2d 715 (1980) holds the same is true even if the child is illegitimate. *Edwards* v. *Martin*, 231 Ark. 528, 331 S.W. 2d 97 (1960) distinctly sets out that the probate court has no jurisdiction to hear a contest for the custody of a child, that power being reserved to the chancery court. In

*Kirk* v. *Jones*, 178 Ark. 583, 12 S.W. 2d 879 (1928), we said, "Minors are the wards of chancery courts, and it is the duty of such courts to make any orders that would properly safeguard their rights."

In *Underwood* v. *Farrell*, 175 Ark. 217, 299 S.W. 5 (1927), we stated that the juvenile court was not a substitute for the circuit court. See also, *Sargent* v. *Cole*, 269 Ark. 121, 598 S.W. 2d 749 (1980).

In the case before us the three children had been temporarily abandoned. The State was the proper party plaintiff in its public guardianship capacity because an emergency situation involving children existed. Clearly, the juvenile court was the court with jurisdiction to determine whether the children should be placed in the temporary care of the State, and we affirm the circuit judge in so holding.

Each parent asked the circuit judge to appoint an attorney so they could contest permanent custody between themselves. The circuit judge was correct in refusing to appoint attorneys for this purpose. Juvenile court has no jurisdiction to hear custody cases between private litigants. Juvenile courts hear cases involving temporary care of infants as wards of the State, while chancery courts hear custody cases between private litigants. *Ex Parte King*, supra. Since the juvenile court had no jurisdiction to hear a custody dispute between parents there could be no requirement that attorneys be appointed to represent the separate parents.

The appellants are still married and both still have permanent custody, subject to the temporary care by the State. There is no independent cause of action by which one spouse may sue the other solely for the custody of their children. Suits between spouses for custody are derivative of a divorce action or a separate maintenance action. No such action has been filed in chancery court. The one attorney had no conflict in law by representing both parents against the State in juvenile court or on appeal in circuit court.

Appellants cite a number of cases from other states to

support their contention that an attorney should be appointed for the parents in a "termination of parental rights case." Those cases are not applicable to the Arkansas system because in this state jurisdiction over dependent or neglected children and jurisdiction over termination of parental rights cases are in different courts.

When the juvenile court temporarily places children in the care of the State it does not terminate parental rights. The child is temporarily removed from the physical possession of the parent, but the parents normally may still visit the child; have companionship with the child; discipline the child; inculcate in the child the parents' moral and ethical standards; control and manage the child's earnings; control and manage the child's property; prevent adoption without consent; and have the child bear the parents' name. The parents still have the duty of support. The parents are not precluded from asking at any time that the child be returned to them. On the other hand, parental rights are greatly limited in the probate court by guardianship proceedings or else in the chancery court by a custody decision. These rights are completely terminated in the probate court in an adoption proceeding. The issue of appointment of an attorney in the case of a parental status termination proceeding is not before us. We affirm the holding of the circuit court in refusing to appoint attorneys for both appellants.

Appellants next ask that we adopt the practice of holding bifurcated juvenile proceedings so that jurisdictional adjudication of a dependent or neglected child is undertaken apart from a permanent custody disposition. We already have such a system, and we could not change it if we wanted, as it is mandated by the Arkansas Constitution for the reasons previously explained.

The issue has not been raised either below or here concerning whether an attorney should be appointed for neglected or dependent children who are indigent. We are disturbed by appellee's 1978-1979 annual report which is cited by appellants for the proposition that 63 percent of the Arkansas children remain in foster care for longer than one year and that 19 percent remain in foster care longer than six

years. Upon an adversary proceeding, with all the issues and facts being litigated below, we will decide whether the appointment of an attorney for these children would help prevent a child from spending his or her critical years adrift in foster care.

Appellants contend that the State's quantum of proof is the standard of clear and convincing evidence. That is the correct standard in some parental rights termination proceedings, for example, an adoption case, *Harper* v. *Caskin*, 265 Ark. 558, 580 S.W. 2d 176 (1979). However, that is not the standard in juvenile court where there is no permanent termination of parental rights and the interests are different. The State, in its capacity as public guardian of infants, is seeking an order to temporarily care for neglected or dependent children. This action is for the benefit of the children and their rights are at least as great as those of the parents. As a result, the preponderance of the evidence standard is proper and we affirm the circuit judge in so holding.

There was substantial evidence upon which the trial judge based his verdict. The parents, the appellants, left these children with a man with whom they were not well acquainted. They were to be gone two days, but did not return for ten. The appellants never called, never wrote nor did they in any manner let anyone know their location. The father is shown to have a serious drinking problem. Neither had room for the children. The father explained that he hoped to get public housing and the mother testified that she had only one bed which she was sharing with another man. There was testimony that the children were filthy and one was bruised. This testimony, coupled with the desirability of keeping the children together if at all possible, is substantial. We affirm the decision and remand it to juvenile court for continued supervision.