Vicki NANCE *v.* ARKANSAS DEPARTMENT
OF HUMAN SERVICES

93-736 870 S.W.2d 721

Supreme Court of Arkansas
Opinion delivered February 21, 1994
[Supplemental Opinion on Denial of Rehearing
April 18, 1994]

44

*Kent L. Tharel*, for appellant.

*Kay West Forrest*, for appellee.

*Mark Lindsay, P.A.*, for David Nance.

*Alene Cox*, Guardian Ad Litem for Mary Lila Nance.

DAVID NEWBERN, Justice. Vicki Nance appeals an order of the Juvenile Court placing custody of her daughter with her former husband, Roy David Nance. The order is the result of juvenile court hearings which were extensive in number and duration. Ms. Nance has presented five points of appeal, the last of which contains several subpoints. The main question is whether a juvenile division of a chancery court, having found a child to be dependent or neglected, has the authority to make an award of custody of the child between competing parents. We find no error and affirm.

Vicki and Roy Nance were married in Texas in 1978. As a result of their divorce in 1982, Ms. Nance was awarded custody of their two children. Ms. Nance subsequently relocated to Fayetteville in 1986 with these children and a younger daughter.

While visiting her father in Texas during the summer of 1992, the oldest daughter, Mary Lila, then fourteen, allegedly stated she did not want to return to her mother. Mr. Nance failed to return her, and a custody battle ensued. Ms. Nance sought a contempt citation in Washington County Chancery Court. Mr. Nance moved to modify the custody award in a district court in Montgomery County, Texas. Each court dismissed for lack of jurisdiction. The Texas court ultimately ordered Mary Lila returned to her mother pursuant to Ms. Nance's petition for a Writ of Habeas Corpus.

Mary Lila's mother subsequently enrolled her in a boarding

school near Chicago for the 1992-93 school year. Very shortly after her arrival, Mary Lila began to exhibit psychological problems, and became incoherent. Ms. Nance removed her from the school, and they returned to Fayetteville.

On August 27, 1992, Ms. Nance was attempting to take Mary Lila to a doctor in Oklahoma and was involved in a serious car accident. Both Ms. Nance and Mary Lila were taken to Springdale Memorial Hospital. At the hospital, Mary Lila was catatonic, and at times hallucinated, thinking that a serpent was in her throat. A psychological evaluation was ordered. Ms. Nance demanded that her daughter be evaluated by a Christian psychiatrist. The hospital and Ms. Nance were unable to agree on a suitable doctor to perform the evaluation. By September 1, 1992, Mary Lila had still not had a psychological examination.

Ms. Nance allegedly attempted to remove her daughter from the hospital contrary to medical advice. As a result, the Washington County Department of Children and Family Services supervisor placed a 72-hour protective hold on Mary Lila and ordered a psychological examination.

The doctor performing the examination concluded that Mary Lila was suffering "acute adjustment disorder with psychotic thinking," and recommended in-patient psychiatric treatment as soon as possible. Brookhaven in Tulsa was recommended based on Ms. Nance's request for a Christian-affiliated facility. Brookhaven refused to admit Mary Lila because of lack of medicaid or insurance to pay for treatment. When Ms. Nance was unable to find another religiously affiliated psychiatric facility, Harborview in Fort Smith was suggested.

At this point doctors evaluating Mary Lila believed Ms. Nance was not willing to take Mary Lila to Harborview. They also believed Ms. Nance might remove her daughter from the facility before her treatment was completed.

As a result of these circumstances, the Department of Human Services (DHS) petitioned for emergency custody of Mary Lila, stating probable cause existed that she was dependent-neglected as defined by the Juvenile Code. The Washington County Juvenile Court granted custody of Mary Lila to DHS and notified Mr. and Ms. Nance of their right to counsel. Mary Lila was placed

in the Harborview facility for psychiatric treatment.

Subsequent to the emergency order, Mr. Nance petitioned to modify the custody aspect of his divorce decree in Washington County Chancery Court. On September 28, 1992, he moved to transfer the petition and consolidate it with the DHS case in juvenile court. The Juvenile Court declined to order the transfer.

Several hearings were held in Juvenile Court as the result of the emergency order. At the first hearing, the Juvenile Court concluded that probable cause existed that Mary Lila was in need of medical care that her family could not provide and ordered Mary Lila's continued custody with DHS.

During the next two hearings, the Juvenile Court heard testimony concerning Mary Lila and Ms. Nance's household. Additionally, the Court held an in camera discussion with Mary Lila in which she indicated her desire to move to her father's home after being discharged from Harborview. Although the Court concluded that both Mr. and Ms. Nance were fit to raise Mary Lila, he ordered that she be placed temporarily with her father upon her release from Harborview.

Subsequent hearings were held to monitor Mary Lila's progress and address visitation and child support issues presented by the parties. On June 30, 1993, the Juvenile Court ruled that it was in Mary Lila's best interest to be placed with her father, and dismissed the proceedings.

Ms. Nance appeals from that order.

### 1. Jurisdiction

Ms. Nance contends the Juvenile Court lacked jurisdiction to enter an order changing custody to Mr. Nance. Ms. Nance argues that custody may only be established pursuant to a divorce, and as Mr. Nance's petition to modify the custody order from his divorce was not transferred to the Juvenile Court, the Court lacked jurisdiction to enter an order of custody. Ms. Nance cites several cases following our ruling which originated in *Robins* v. *Arkansas Social Services*, 273 Ark. 241, 617 S.W.2d 857 (1981), to the effect that there can be no separate action for custody which must be established pursuant to divorce.

■ The *Robins* case, as well as the other cases cited, were decided before the enactment of the Arkansas Juvenile Code of 1989, Ark. Code Ann. § § 9-27-301 through 9-27-352. Section 9-27-305 states any juvenile within the State may be subjected to the jurisdiction of a juvenile court. Section 9-27-306(1) grants juvenile courts exclusive original jurisdiction of proceedings in which a juvenile is alleged to be dependent-neglected.

■ Section 9-27-334(a)(2) allows a juvenile court, pursuant to a finding that a juvenile is dependent-neglected, to transfer custody to DHS, another licensed agency, "or to a relative or other individual." From the language in § 9-27-334 it is clear that the Juvenile Court had the power to award custody of Mary Lila to Mr. Nance once DHS initiated dependency-neglect proceedings. While it does not apply to this case, we note that in 1993 the General Assembly made it clear that a juvenile court's custody order supersedes any existing court order and remains in effect until a subsequent custody order is entered by a court of competent jurisdiction. *See* §9-27-334(b).

■ Ms. Nance cites § 9-27-338(a), which lists disposition alternatives a juvenile court may consider in its 18-month review of dependency-neglect cases, pointing out that transfer of custody is not included. As the Juvenile Court's order in this case was not one made pursuant an 18-month review, we reject the argument, especially in view of the language of § 9-27-334(a)(2) and the General Assembly's subsequent expression of juvenile court priority in §9-27-334(b).

### 2. Dependency-neglect holding

■■ The Juvenile Code requires proof by a preponderance of the evidence in dependent-neglected proceedings. Ark. Code Ann. § 9-27-325(h)(2) (Repl. 1993). We review a Chancellor's findings of fact *de novo*, and will not set them aside unless they are clearly erroneous. Ark. R. Civ. P. 52(a). Ms. Nance argues the Juvenile Court's holding in this respect was clearly against the preponderance of the evidence.

■■ A dependent-neglected juvenile is one who "as a result of abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness is at substantial risk of serious harm." § 9-27-303(12). The Juvenile Code further defines

"neglect" as an act or omission by a parent which constitutes failure or refusal to provide "medical treatment necessary for a juvenile's well being, except when the failure or refusal is caused primarily by the financial inability of the person legally responsible and no services for relief have been offered or rejected." § 9-27-303(23)(B).

The record reflects a dispute between Ms. Nance and Mary Lila's doctors about a proper psychological examiner and that, but for DHS intervention, treatment could have been delayed even more than it was. The record also indicates that some of the doctors and social workers involved in this case were concerned Ms. Nance would not allow Mary Lila to remain at a psychiatric facility for the duration of her treatment. Under these circumstances we have little difficulty concluding the evidence of "neglect" was sufficient, even though it may have stemmed from parental motives which could not be characterized as neglectful in the sense of being intended to harm the child or not to care for her.

### 3. Former attorney's testimony

During July and August of 1992, Kelly Proctor represented Ms. Nance in her attempt to enforce the order granting custody of Mary Lila to her. Ms. Proctor was also Ms. Nance's house guest at that time.

The guardian *ad litem* for Mary Lila Nance subpoenaed Ms. Proctor to testify at an October, 1992, hearing. The testimony, which was unfavorable to Ms. Nance, concerned Ms. Nance's treatment of her children, and the conditions in the home, while Ms. Proctor was a guest there.

Ms. Nance's attorney at the hearing objected to the testimony and refused to waive the attorney-client privilege. The attorney argued that Ms. Proctor's testimony had to do with furtherance of Ms. Proctor's representation of Ms. Nance and was confidential. The Trial Court overruled the objection, limiting Ms. Proctor's testimony to her observations of conditions in Ms. Nance's home. Ms. Nance argues the testimony is barred by the Model Rules of Professional Conduct and Ark. R. Evid. 502.

Model Rule 1.6 concerns a lawyer's duty not to reveal

"information relating to representation of a client unless the client consents after consultation." According to the scope note accompanying them, the Model Rules of Professional Conduct were designed to regulate the practice of law, and to provide a mechanism for disciplining attorneys and not to form the basis of substantive law decisions. Nevertheless, we cite the Model Rules from time to time as having an effect on the outcome of litigation. For example, we cited Model Rule 1.6 in *Burnette* v. *Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990), in the process of deciding whether we should reverse a trial court decision on the ground that a participating attorney should have been disqualified.

We have some doubt whether Ms. Proctor's testimony about the conditions in Ms. Nance's home qualifies as information "relating to representation" of Ms. Nance. We need not dwell on Model Rule 1.6, however, as the matter of attorney-client privilege is clearly regulated by Ark. R. Evid. 502(b).

Rule 502(b) concerns the admissibility of information disclosed to an attorney by her client. It allows a client to prevent the disclosure of any confidential communications "made for the purpose of facilitating the rendition of professional legal services to the client." There is no evidence before us suggesting that Ms. Nance revealed or "communicated confidentially" anything about the conditions in her home to which Ms. Proctor testified.

### 4. Absence of attorney

On April 19, 1993, a hearing was held for the limited purposes of considering requests to modify visitation rights and child support. The hearing was scheduled for a date when Mary Lila would be present in Fayetteville to testify.

Ms. Nance's attorney failed to appear at the hearing. Ms. Nance informed the Trial Court her attorney believed the hearing had been continued to a later date. The Juvenile Court unsuccessfully attempted to contact the attorney. Attorneys for the other parties objected to a continuance due to the prospective difficulty of rescheduling Mary Lila's presence.

The Juvenile Court commenced the hearing, and allowed

Ms. Nance to represent herself. Mary Lila testified that her mother had acted in a very hostile and threatening manner during their last visit. After cross examining Mary Lila, Ms. Nance became frustrated and stated she was willing to place her daughter in Mr. Nance's custody. Ms. Nance stated that she was tired of the proceedings and had no money to continue further. The Court stated Ms. Nance would not be held to those remarks until she had talked to her attorney.

Ms. Nance argues her right to due process of law was violated. Section 9-27-302(4) states the Juvenile Code is designed to protect a party's due process rights, and § 9-27-314(b) provides that a parent has a right to an attorney. We fail to see how Ms. Nance's rights were violated. She was notified of her right to counsel, and indeed had obtained counsel to represent her. Ms. Nance did not object to the hearing commencing, and neither did the attorney representing her at the subsequent hearing. She was clearly not denied the right to counsel, and the Court attempted to protect her interests.

### 5. Other statutory requirements

Ms. Nance finally contends the Court erred by failing to require DHS to comply with the requirements of the juvenile code. She argues that the Juvenile Court failed to require a case plan aimed at reunification of Mary Lila with her mother in accordance with § 9-27-303(6)(G). We agree that an important goal of the statutory juvenile justice system is reunification of the juvenile with the parent, custodian, or guardian from whom the juvenile has been separated. § 9-27-303(17). We do not, however, conclude that reunification must be achieved if it proves to be against the best interests of the juvenile.

In response to this argument, DHS and the guardian *ad litem* of Mary Lila point out a number of actions taken which could be seen as efforts to effect reconciliation and thus reunification of Mary Lila with Ms. Nance. They include DHS's payment for long-distance phone calls and air travel for Mary Lila from Texas to Fayetteville and back for visitation in addition to some DHS home services.

Ms. Nance argues that the home study requirements found in §9-27-303(19) were not met. Two home studies were

done on Mr. Nance's home. The first was an informal one conducted by DHS, and the second was by Texas Child Protective Services, resulting in a written report which appears in the record. No home study was done on Ms. Nance's home because she and her lawyer declined after being informed it was available at Ms. Nance's option. There was, as noted above, however, considerable testimony about conditions in Ms. Nance's home.

 Finally, Ms. Nance argues that there was no compliance with the mandatory provisions of the Interstate Compact on the Placement of Children found at Ark. Code Ann. § 9-29-201 (Repl. 1993). Subsection (a) of Article III of the compact makes it clear that it is meant to deal with children who are sent from a sending state into a receiving state "for placement in foster care or as a preliminary to a possible adoption." That is not the case here.

Affirmed.

GLAZE, J., concurs.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
## APRIL 18, 1994

873 S.W.2d 812

*Kent L. Tharel*, for appellant.

No response.

PER CURIAM. We deny Ms. Nance's petition for rehearing, but we do agree that a clarification is needed of our earlier opinion as it discussed Ark. Code Ann. § 9-27-338 (Repl. 1993).

In her petition, Ms. Nance contends, contrary to this court's decision, that Ark. Code Ann. § 9-27-338(a) (Repl. 1993) applies to this case. Under that provision, Nance points out that the juvenile court's disposition in this case was limited to one of the following: (1) return Mary Lila to Ms. Nance; (2) authorize a plan to terminate Mary Lila's relationship with Ms. Nance; (3) place Mary Lila in long-term foster care; or (4) allow Mary Lila to continue in an out-of-home placement for a specified, limited period of time.[1] Out-of-home placement is defined in Ark. Code Ann. § 9-27-303(26) (Repl. 1993) as follows:

> (A) Placement in a home or facility other than the home of the parent or guardian from whose custody the court has removed the juvenile; or

> (B) Placement in the home of a relative; provided, however, this definition shall not include circumstances where the court has discontinued orders for delivery of fam-

---

[1]Section 9-27-338(a) states in full as follows:

(a) Eighteen (18) months after the date the juvenile enters an out-of-home placement, or earlier if ordered by the court, the court shall hold a hearing in order to enter a new disposition in the case. At the hearing, based upon the facts of the case, the court shall enter one (1) of the following dispositions:

(1) Return the juvenile to the parent, guardian, or custodian;

(2) Authorize a plan for the termination of the parent-child relationship, guardianship, or custody;

(3) Place the juvenile in long-term foster care; or

(4) Allow the juvenile to continue in out-of-home placement for a specified period of time.

ily services pursuant to a determination that the home of the relative shall be the permanent home of the juvenile.

The Juvenile Code further provides that, if the court finds that the juvenile should remain in an out-of-home placement, either long-term or otherwise, the juvenile's case shall be reviewed every six months. Ark. Code Ann. § 9-27-338(b) (Repl. 1993).

▌ Ms. Nance's contention is correct that, once the juvenile court took jurisdiction of this matter as a dependent-neglect case, the Juvenile Code provisions became applicable. That being so, the juvenile court was obliged to provide for periodic reviews under Ark. Code Ann. § § 9-27-337 and 9-27-338 (Repl. 1993).

The record reflects the juvenile court did conduct hearings, but when it concluded its final hearing it merely found Mary Lila needed stability and her best interests would be served by transferring (continuing) custody with her father.[2] The court further found that DHS no longer had to provide services. The juvenile court then erred when it dismissed the proceedings even though it further determined Ms. Nance has been in substantial compliance with the case plan developed by DHS.

▌ Under the Juvenile Code, a juvenile court must follow the procedures and dispositions set out under § 9-27-318, although other permissible dispositions are available under Ark. Code Ann. § 9-27-335 (Repl. 1993) in situations where the court finds reasonable efforts to deliver family services have *not* been made —the juvenile court here made no such finding.[3] See also Ark. Code Ann. § 9-27-335 (Repl. 1993). Nowhere in the Code can we find authority for a juvenile court to dismiss dependent-neglect proceedings when the parties all comply with the case plan and reasonable efforts are being made by all concerned.[4] Certainly, reuni-

---

[2]We note here that this case is not one where the juvenile court authorized a plan to "terminate" Ms. Nance's parental relationship with or custody of Mary Lila. In fact, the court merely concluded that the return of custody of Mary Lila to Ms. Nance was contrary to Mary Lila's welfare *"at this time."*

[3]In fact, the court's final order found DHS made reasonable efforts to provide services to the juvenile and family. We note also that § 9-27-335 does allow for dismissal of dependent-neglect proceedings if DHS fails to provide family services. Presumably in such an instance, the custody of the child is returned to the custodial parent.

fication, the cornerstone of the Juvenile Code, could never be achieved in these circumstances by dismissing the proceedings.

██ In sum, while we agree that at the time of the hearing, the record tended to support the juvenile court's continuing the custody of Mary Lila with her father, the court was entirely wrong in dismissing this dependent-neglect case under the circumstances presented. If such dismissal is permitted here, then the review procedures and services provided by law to protect children and families become applicable and enforceable only when a juvenile court, in its own discretion, wishes to invoke those Code provisions. Therefore, we remand this matter to the juvenile court with directions to reinstate this case for periodic reviews required by Arkansas's Juvenile Code provisions.

---

[4] At this point, we would reiterate a point previously mentioned in our decision that the General Assembly has made it clear that a juvenile court's custody order supersedes any existing court order and remains in effect until a subsequent custody order is entered by a court of competent jurisdiction. Ark. Code Ann. § 9-27-334(b) (Repl. 1993).