B.J. McADAMS *v.* Melvin ELLINGTON

97-917                                    970 S.W.2d 203

Supreme Court of Arkansas
Opinion delivered May 28, 1998

*Appellant,* pro se.

*Marcus Vaden* and *Ron Tullos,* for appellee.

DAVID NEWBERN, Justice. This case involves B.J. McAdams's claims against four separate parties: 1) Alma Lee McAdams, 2) Loyd Stanley and Stanley Jewelers Gemologist ("Stanleys"), 3) Keith Mittledorf, and 4) Melvin Ellington. All of the claims arise from property ownership disputes and other matters that have been the subjects of marital litigation between Mr. McAdams and Alma Lee McAdams. The Chancellor found that Mr. McAdams had no rights in the items at issue. We affirm the Chancellor's decision with respect to the claims against the Stanleys, but we must reverse as to the claims against the other defendants.

B.J. and Alma Lee McAdams married in 1976. When they divorced in 1985, they entered a property-settlement agreement. That agreement is not included in Mr. McAdams's abstract of the record, but undisputed testimony indicated that Ms. McAdams received a 1979 Lincoln, real property in North Little Rock, a diamond necklace, and a diamond ring pursuant to the agreement. In 1989, B.J. and Alma McAdams remarried.

In 1993, the McAdamses again divorced and entered a second property-settlement agreement in which Ms. McAdams agreed to return the diamond ring to Mr. McAdams. They also agreed that Mr. Vaden, an attorney apparently representing both parties, would retain custody of the ring. Later that year, they jointly petitioned, again represented by Mr. Vaden, for annulment of the divorce decree.

Later, Mr. McAdams filed a claim against Ms. McAdams and Mr. Ellington in which he alleged that conveyances that Ms. McAdams made to third parties were void because he had rights to the conveyed property. In particular, he alleged that Ms. McAdams's conveyance of real property to herself and Mr. Ellington was void because it violated his homestead and curtesy rights. He also alleged that Ms. McAdams's conveyances to Mr. Ellington of the 1979 Lincoln and a diamond from the diamond necklace were void because they were marital assets. Mr. McAdams alleged that Ms. McAdams's conveyance of three diamonds from the ring to the Stanleys was void because he and Ms. McAdams agreed to honor the 1993 property-settlement agreement pursuant to which he retained a property interest in the diamonds.

Mr. McAdams also alleged that Keith Mittledorf purchased the diamonds from the Stanleys, and he sought an order requiring that Mr. Mittledorf return the diamonds to him or, in the alternative, restitution. Ms. McAdams argued that she owned both the real property and the personal property based on the 1985 property-settlement agreement.

## 1. The Stanleys

In his second amended complaint, Mr. McAdams alleged that the Stanleys were liable for fraud pursuant to Title 18, Ark. Code Ann., and the Arkansas Fraudulent Conveyance Act, Ark. Code Ann. §§ 4-59-201 through 4-59-207 (Repl. 1996) because they purchased three diamonds from Ms. McAdams for less than their appraised value, without asking for proof of ownership, and replaced the diamonds with cubic zirconia. Mr. McAdams also alleged that he wrote the Stanleys seeking restitution, and they refused. Mr. McAdams asked for $40,000, referred to as "restitution" at one point and as "damages" at another, and $80,000 in punitive damages on the ground that the fraud was willful. Mr. McAdams argues that the Chancellor erred in dismissing his claim for fraud and fraudulent conveyance against the Stanleys. We affirm on this point.

The Stanleys moved to dismiss the complaint on the ground that it did not meet the requirements of Ark. R. Civ. P. 9(b) which requires statement of the circumstances constituting fraud with particularity. The Stanleys also argued that the Chancellor lacked jurisdiction to hear a claim for monetary damages, citing Ark. R. Civ. P. 12(h)(3). After hearing oral arguments regarding the Stanleys' motion, the Chancellor granted the motion and dismissed the complaint without stating the basis for the ruling.

Mr. McAdams argues that his complaint against the Stanleys alleges specific facts constituting fraud. We disagree and hold that even if jurisdiction in chancery court was proper, the Chancellor properly dismissed the second amended complaint because Mr. McAdams failed to allege the circumstances constituting the fraud claim with particularity. See Ark. R. Civ. P. 9(b).

■ To establish fraud, a plaintiff must show: (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance upon the representation; and (5) damage suffered as a result of the reliance. *Scollard v. Scollard*, 329 Ark. 83, 947 S.W.2d 345 (1997). Mr. McAdams did not allege facts sufficient to satisfy those elements.

■ As to Mr. McAdams's allegation that the conveyance was fraudulent pursuant to the Arkansas Fraudulent Conveyance Act, Ms. McAdams's sale of diamonds to the Stanleys clearly does not constitute a fraudulent conveyance as described in Ark. Code Ann. § 4-59-204 because Mr. McAdams is not a creditor of Ms. McAdams.

### 2. Mr. Mittledorf

Mr. McAdams argues that the Trial Court erred in dismissing his motion for a default judgment against Keith Mittledorf, who allegedly bought the diamonds from the Stanleys. In his fourth amended complaint, Mr. McAdams alleged that the Stanleys sold the diamonds that they bought from Ms. McAdams to Mr. Mittledorf. Mr. McAdams asked that the Chancellor order Mr. Mittledorf to turn over the diamonds to him, or, in the alternative, pay restitution. On November 19, 1996, Mr. McAdams moved for default judgment against Mr. Mittledorf based on his alleged failure to file a timely answer.

Mr. McAdams alleged that service *via* certified mail, restricted delivery requested, was attempted on Mr. Mittledorf who refused delivery. He alleged that he filed the return of summons with the refused returned envelope attached. He also alleged that he mailed a cover letter with a copy of the complaint, summons, and interrogatories by first class mail to Mr. Mittledorf at his residence. He alleged that the envelope was opened and returned to him. Attachments to the motion included the amended summons with the envelope stamped "return" and marked "refused," and the cover letter with the envelope marked "refused, return to sender."

■ Arkansas R. Civ. P. 4(d)(8) states, in part, as follows:

> Service pursuant to this paragraph shall not be the basis for the entry of a default or judgment by default unless the record contains a return receipt signed by the addressee or the agent of the addressee or a returned envelope, postal document or affidavit by a postal employee reciting or showing refusal of the process by the addressee. If delivery of mailed process is refused, the plaintiff or attorney making such service, promptly upon receipt of notice of such refusal, shall mail to the defendant by first class mail a copy of the summons and complaint and a notice that despite such refusal the case will proceed and that judgment by default may be rendered against him unless he appears to defend the suit. Any such default or judgment by default may be set aside pursuant to Rule 55(c) if the addressee demonstrates to the court that the return receipt was signed or delivery was refused by someone other than the addressee.

The Chancellor denied the motion because Mr. McAdams did not have a document establishing that the service was refused specifically by Mr. Mittledorf. Mr. McAdams's exhibits satisfied Rule 4; thus, we reverse on this point.

### 3.   Mr. Ellington and Ms. McAdams

In his motion to disqualify Mr. Vaden as the attorney for Ms. McAdams and Mr. Ellington, Mr. McAdams contended that Mr. Vaden represented both McAdamses in preparing and filing the 1993 property-settlement agreement and the annulment of the divorce decree. He also contended that Mr. Vaden accepted fees pursuant to that representation from both parties and was made custodian of the diamond ring at issue for a period of time. It was also alleged that Mr. Vaden acted as attorney for Ms. McAdams and Mr. Ellington in preparing and filing the real-property deed and represented Mr. Ellington and Ms. McAdams in other actions involving Mr. McAdams as a party.

Attached to the disqualification motion were several exhibits including (1) the 1993 property-settlement agreement, (2) the 1993 joint petition for annulment of decree of divorce which was submitted and signed by Mr. Vaden, (3) a letter from Mr. Vaden to Ms. McAdams indicating that he represented her in the annulment

of the divorce, (4) a 1993 check written by Mr. McAdams to Mr. Vaden, (5) a 1994 warranty deed from Alma Lee McAdams to herself and Melvin Glenn Ellington with the words "Prepared By Marcus Vaden" written at the bottom, and (6) a 1995 letter from Mr. Vaden to Mr. McAdams enclosing a file-marked copy of Ms. McAdams's and Mr. Ellington's answer to Mr. McAdams's complaint.

In his order denying Mr. McAdams's motion, the Chancellor simply stated that Mr. McAdams failed to show that a conflict existed. The exhibits to the motion for disqualification are sufficient for us to conclude that the Chancellor was in error.

■ In *Nance v. Ark. Dep't of Human Servs.*, 316 Ark. 43, 870 S.W.2d 721 (1994), we stated that even though the Model Rules are designed to regulate the practice of law, and to provide a mechanism for disciplining attorneys and not to form the basis of substantive law decisions, we cite the Model Rules from time to time as having an effect on the outcome of litigation. Rule 1.9(a) of the Model Rules of Professional Conduct states as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client consents after consultation.

"The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Model Rule 1.9, cmt. 2.

■ An attorney is disqualified from representing a party in an in an adversary proceeding when,

> (1) the moving party was previously represented by the attorney whose disqualification he now seeks; (2) the matters embraced within the pending suit are *substantially related* to the matters or the cause of action for which the attorney previously represented the moving party; and (3) the attorney is representing an adversary of the movant party in the pending suit. [Emphasis in original.]

*Gipson v. Brown*, 288 Ark. 422, 431, 706 S.W.2d 369, 374 (1986) (quoting *Heathcoat v. Santa Fe Internat'l Corp.*, 532 F.Supp. 961 (E.D. Ark. 1982)) (remanding to the chancellor with instructions to conduct a hearing to determine whether our statutes override the religious doctrine, polity or practice of the church as protected by the federal and state constitutions). *See Gipson v. Brown*, 295 Ark. 371, 749 S.W.2d 297 (1988) (dismissing the appeal on the basis that an examination of the issues on appeal resulted in the "impermissible entanglement of this court in ecclesiastical matters"). In *Martindale v. Richmond*, 301 Ark. 167, 782 S.W.2d 582 (1990), we upheld a determination of our Committee on Professional Conduct that Model Rule 1.9 was violated by an attorney who represented one party in a divorce proceeding that was ultimately dismissed and then later represented the other party in seeking an increase in child-support payments after the parties were divorced even though the attorney did not represent either party in the suit in which they were divorced.

Mr. Vaden represented both Mr. and Ms. McAdams in their 1993 joint petition for the annulment of their divorce decree. There is also evidence to support Mr. McAdams's allegation that Mr. Vaden represented both parties in their 1993 property-settlement agreement and divorce decree because Mr. Vaden is named as the custodian of personal property referred to in the agreement. Both the 1993 property-settlement agreement and the subsequent divorce annulment are substantially related to the present lawsuit, which concerns, in part, the parties' rights to personal property that was the subject of the 1993 agreement. The substantial relationship is also implicated in Mr. McAdams's argument that he has ownership rights in personal property at issue because he and Ms. McAdams later agreed to honor the 1993 property-settlement agreement.

■ Although Mr. McAdams's claim to the real property conveyed by Ms. McAdams to herself and Mr. Ellington is based on homestead and curtesy rights rather than the 1993 property-settlement agreement, there is an appearance of impropriety in Mr. Vaden's representation of Mr. Ellington and Ms. McAdams against Mr. McAdams in this matter. Likewise, there is an appearance of impropriety in Mr. Vaden's representation of Ms. McAdams against Mr. McAdams's claim that she maliciously prosecuted him in retaliation for his posting of eviction notices to the tenants

at the rental property that he claimed an interest in based on homestead and curtesy rights.

 There is no evidence of an intent on Mr. Vaden's part to use against Mr. McAdams confidences or information from the prior instances in which he represented both parties. Nevertheless, we cannot countenance the subsequent representation of Ms. McAdams by Mr. Vaden because of the appearance of impropriety. *See Martindale v. Richmond*, 301 Ark. 167, 782 S.W.2d 582; *Berry v. Saline Memorial Hosp.*, 322 Ark. 182, 907 S.W.2d 736 (1995) (stating we continue to recognize the "appearance of impropriety" standard in disqualification cases).

Affirmed in part; reversed and remanded in part.

IMBER, J., not participating.