Stephanie MILLER *v.* ARKANSAS DEPARTMENT OF
HUMAN SERVICES and Ronnie Joiner

CA 03-676                                            167 S.W.3d 153

Court of Appeals of Arkansas
Division III
Opinion delivered May 12, 2004

*Val P. Price*, for appellant.

*Gray Allen Turner*, Office of Chief Counsel, for appellee.

R OBERT J. GLADWIN, Judge. Appellant Stephanie Miller appeals from an order of the Greene County Circuit Court that changed custody of the parties' minor daughter, A.J., from appellant to the child's father, appellee Ronnie Joiner. Appellant contends that the trial court erred in granting a change of custody in a dependency-neglect case that had been consolidated with a change-of-custody case. We affirm.

This cause of action originated as a dependency-neglect case when appellee Arkansas Department of Human Services (DHS) took emergency custody of A.J. and her half-brother, Z.M., on December 29, 2000. Z.M., only five weeks old at the time, had been physically abused while in appellant's care, suffering severe bruising, two broken ribs, and a broken femur. The medical evidence indicated that some of these were old injuries. The abuse was allegedly committed by appellant's brother when he was living in appellant's home. Pursuant to appellant's compliance with the case plan and court orders, Z.M. was eventually returned to appellant's custody. Only the custody of A.J. is at issue in this appeal.

On January 8, 2001, the trial court found that there was probable cause that the emergency conditions that necessitated removal of the children continued so that it was necessary that the children remain in the custody of DHS. The court granted appellee visitation rights as to A.J., his daughter, and ordered that a home study be conducted on appellee pursuant to his request for temporary custody.

Appellant and appellee had never married, but appellee had, in December of 1999, been adjudicated the natural and biological father of A.J. Since that time, appellee had paid child support and exercised visitation rights with A.J. When A.J. was removed from appellant's home, appellee filed an answer and a petition, notifying the court that he had filed a petition for change of custody of A.J.

He stated that he had not been given immediate notice of A.J.'s removal from appellant's home and contended that emergency custody of A.J. should have been placed with him at the time of removal. He also contended that he was the proper person to have custody of A.J. during the pendency of the dependency-neglect matter and the change-of-custody case.

At the February 27, 2001, adjudication hearing, the trial court found the children to be dependent-neglected. A.J. was placed in the temporary custody of appellee, with the goal of the case continuing to be reunification with appellant.

On May 18, 2001, a review hearing was held, at which time the trial court found that continuation of custody of A.J. with her father was in the best interest of and necessary to the protection of her health and safety. This decision was based in part on the court's consideration of a report filed by DHS employee Kim Simpson, which noted that A.J. had adjusted well to placement with her father. DHS recommended that A.J. remain in the custody of appellee. At the review hearing held on September 24, 2000, the court continued custody of A.J. with her father, and granted appellee's petition to consolidate the change-of-custody and dependency-neglect proceedings. The court again continued custody of A.J. with appellee at the review hearings held on November 5, 2001, and December 3, 2001.

A final hearing was held on February 12, 2002. The trial court found there was clear and compelling evidence that there had been a material change in circumstances since the entry of the court's order on December 10, 1999. That order had addressed the aforementioned paternity action and the child support and visitation rights regarding A.J. and her father, appellee Ronnie Joiner. In support of the decision finding a material change in circumstances, the court cited the following factors: A.J. was in the care and custody of appellant during the time in which the infant, Z.M., sustained serious physical injury; appellant persisted in her statement that she did not know how Z.M. received his injuries; she acknowledged that she had failed to protect her children; appellant had failed to comply with the court order requiring counseling; the relationship between A.J. and appellant's husband had become very hostile and antagonistic; A.J. became anxious before visits with appellant; A.J. had adapted well to being in her father's home; DHS reports indicated that A.J.'s progress in counseling had been slow; A.J. demonstrated aggressive behavior with dolls during play therapy, which escalated in October of 2001

after she expressed that there were problems between herself and her step-father; A.J. had demonstrated no aggression toward her half-brother living with her in her father's home, toward her half-sister living in her mother's home, or toward other children she was around in daycare, but she had demonstrated aggression toward her half-brother Z.M.; and A.J. had resided with her father, appellee, for a period in excess of twelve months. The court also noted that appellant had refused to bring A.J.'s siblings to visitation at the DHS office, even though A.J. had asked her to do so. The court concluded that this conduct was evidence of the fact that appellant does not consider what is in A.J.'s best interest. Having found clear and compelling evidence of a material change in circumstances, the court then found that it would be in the best interest of A.J. to be in the custody of her father, subject to appellant's visitation rights.

■ Appellant argues on appeal that the trial court erred in granting a change of custody in a dependency-neglect case that had been consolidated with a petition for a change of custody. Appellant filed no response to appellee's petition to consolidate the two matters, and the record reflects that the petition was granted by the court at the September 24, 2001, review hearing without objection from appellant. Appellant failed to preserve this argument for appeal and has thus waived any argument that the cases should not have been consolidated. *See Seeco, Inc. v. Hale*, 341 Ark. 673, 22 S.W.3d 157 (2000).

■ Even if the issue had been preserved for appeal, appellant would not prevail. Under Rule 42 of the Arkansas Rules of Civil Procedure, a court may order consolidation of all actions involving a common question of law or fact that are pending before the court. Appellant argues that there was an inherent conflict between the two matters, as the goal of the dependency-neglect proceeding was the child's reunification with appellant, while the goal of the custody proceeding was to change custody to appellee. Appellant confuses the obviously opposing goals of the adversarial parties with the overall goal of the proceeding. Even though reunification is often the goal throughout much of a dependency-neglect proceeding, the supreme court has stated that it is not necessary to institute reunification if it proves to be against the best interest of the child. *See Nance v. Arkansas Dep't of Human Servs.*, 316 Ark. 43, 870 S.W.2d 721 (1994). In any case involving custody of a child, the primary consideration is the welfare and best

interest of the child; all other considerations are secondary. *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003). Regardless of the goals of the parties, or even the typical goal of a particular type of proceeding, the trial court is charged with reaching a decision that promotes the best interest of the child.

■ However, we believe it important to note that when a trial court chooses to consolidate matters that involve the custody of a child, the court may be required to address different criteria in determining the best interest of the child. In these situations, the trial court should determine under which theory it is proceeding and address the appropriate factors.

■ For example, where a trial court decides that a change of custody should be effected under the juvenile code, the court must follow the procedures and dispositions set forth in the code. In *Nance v. Arkansas Department of Human Services, supra*, the trial court had placed custody of the child with her father subsequent to her having been removed from the custody of her mother under a dependency-neglect proceeding. The trial court had concluded that although both parties were fit to raise the child, it was in her best interest to be placed with her father. The trial court then dismissed the proceedings. In the supplemental opinion on denial of rehearing, the supreme court stated that although the record tended to support the juvenile court's continuing the custody of the child with her father, the court erred in dismissing the dependent-neglect case where it had also determined that the appellant had been in substantial compliance with the case plan. The supreme court remanded the case with directions to reinstate the case for periodic review as required by the code provisions then in effect.

■ On the other hand, when a trial court is making a custody determination pursuant to a petition for a change of custody, it must first determine whether a material change in circumstances has occurred since the last order of custody. *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999). If that threshold requirement is met, the court must then determine who should have custody, with the sole consideration being the best interest of the child. *Id.*

Having found that appellant had complied with the case plan, the trial court herein properly made the custody determination pursuant to the change-of-custody petition that had been filed

by appellee. The court found that there had been a material change in circumstances, noting, among other things, that A.J. had been in the care and custody of appellant at the time her infant brother sustained serious physical injury; that appellant persisted in her statement that she did not know how the infant had received his injuries; that appellant admitted to the psychological examiner that she had failed to protect her children; that the relationship between A.J. and appellant's husband had become very hostile and antagonistic; that A.J. became anxious before her visits with appellant; that appellant had refused to bring A.J.'s siblings to visitation as requested by A.J., and that this conduct was evidence of the fact that appellant did not consider what was in the best interest of A.J.; and that A.J. had adapted well to being in her father's home. The court then found that it would be in the best interest of A.J. to be in the custody of her father, appellee, subject to appellant's visitation rights.

Appellant argues on appeal that appellee failed to prove there was a material change in circumstances that would warrant a change of custody. In support of this argument, appellant points out that (1) there was never any proof of any physical abuse toward A.J., and (2) the abuse inflicted upon A.J.'s infant brother "was not material" because he was later returned to appellant's home. Regardless of whether there was any proof of physical abuse toward A.J., the fact that her five-week-old brother had sustained serious physical injuries while he and A.J. were in appellant's care certainly constitutes a material change in circumstances which affected the welfare of both children. See *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999) (holding that custody should not be changed unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child). The fact that the infant was later returned to appellant's custody does not change the fact that A.J. was living in a home where serious physical abuse of a child had occurred. Aside from the abuse that resulted in the dependency-neglect proceeding, the court also considered many other factors, including the fact that the relationship between A.J. and appellant's husband had become hostile and antagonistic; that A.J. became anxious before visiting her mother; that appellant exhibited behavior that reflected that she did not consider what was in A.J.'s best interest; and that A.J. had adapted well to living in her father's home and was slowly making progress in counseling.

██  Although this court reviews child-custody decisions *de novo* on the record, the findings of the trial court will not be disturbed unless it is shown that they are clearly against the preponderance of the evidence. *Durham v. Durham*, 82 Ark. App. 562, 120 S.W.3d 129 (2003). A finding is clearly against the preponderance of the evidence, when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* Since the question of the preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court gives special deference to the superior position of the trial court to evaluate and judge the credibility of the witnesses in child-custody cases. *Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003). We have often stated that we know of no cases in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as in those involving children. *Id.*

██  We cannot say the findings of the trial court are clearly against the preponderance of the evidence. The court determined that there had been a material change in circumstances, giving a detailed account of the events constituting such a change, and then found it to be in the best interest of the child to order a change of custody from appellant to appellee. This decision is supported by the evidence.

Affirmed.

BIRD and ROAF, JJ., agree.