### NEWMAN *v.* LYBRAND.

Opinion delivered October 8, 1917.

1. CLOUD ON TITLE—ACTION TO REMOVE—VALIDITY OF TAX DEED.—In an action to cancel a tax deed as a cloud on title, the burden is upon the plaintiff to show that the tax deed is void.

2. CLOUD ON TITLE—ACTION TO REMOVE—SUFFICIENCY OF EVIDENCE.—The evidence held insufficient to warrant the cancellation of a tax deed, as a cloud on appellant's title.

3. CLOUD ON TITLE—CERTIFICATE OF SHERIFF AND COLLECTOR—VALIDITY OF TAX DEED.—In an action to cancel a tax deed as a cloud on

title, a certificate of the sheriff and collector, that taxes had been paid on the lands the year of the alleged forfeiture, is incompetent, when not taken as a deposition, nor witnesses brought in to sustain it, nor any copy of the records offered in evidence.

Appeal from Grant Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

*T. N. Nall,* for appellant; *D. E. Waddell,* of counsel.

1. The taxes had been paid and the tax sale and deed were void. 32 Ark. 386; 15 *Id.* 331, 336; 21 *Id.* 578; 37 *Id.* 100; 23 *Id.* 375; 97 *Id.* 369; 22 *Id.* 118.

2. The land was not properly described nor advertised. 15 Ark. 363; 21 *Id.* 578; 59 *Id.* 46; 27 S. W. 970; 112 Ark. 159; Black on Tax Titles, 37-8; 36 L. R. A. (N. S.) 1063.

The sale was unauthorized and void. Appellee acquired no title.

*E. H. Vance,* for appellee.

1. There was no competent evidence to show that the taxes had been paid or the sale void. The best evidence is required, the record evidence, or a duly signed tax receipt. Here there was nothing but the certificate of the collector as to what the records showed. 4 Ark. 129; 11 *Id.* 349; 2 *Id.* 315.

2. The burden was on plaintiff and he failed to show any title. 76 Ark. 447; 96 *Id.* 251.

STATEMENT BY THE COURT.

This suit was instituted by the appellant against the appellee to quiet title to the east one-half of the southwest one-quarter of section 22, township 6 south, range 13 west, situated in Grant County, Arkansas.

Appellant deraigned title through a sale of the land upon a foreclosure proceeding of a certain deed of trust had in the United States District Court for the Eastern District of Arkansas, in which the lands in controversy, among others, were sold by Durand Whipple, the standing master in chancery, under the orders of the court. A deed was executed by Durand Whipple, to the purchaser at the sale, which deed was duly confirmed and approved by the court.

The appellant alleged that the appellee had a clerk's tax deed to the lands, executed on the 27th day of October, 1913, which was regular on its face and showed that the lands were forfeited and sold for non-payment of the taxes for the year 1910; that the deed erroneously embraced the lands in controversy; that the taxes on these lands for the year 1910 were paid, and that therefore the alleged forfeiture and sale of the lands for these taxes were void, and that the clerk's deed based upon such forfeiture and sale was therefore a cloud upon the appellant's title. He prayed that such deed be canceled and set aside in order that his title might be cleared of such cloud.

The appellee answered, denying appellant's allegations as to the ownership of the land, and set up title in himself by virtue of his purchase at a tax sale had on June 13, 1911, based on a forfeiture for the non-payment of the taxes for the year 1910, and the clerk's tax deed duly executed to him under the law in pursuance of such sale and purchase, which deed had been duly recorded and which he exhibited to his answer.

The chancellor found that there was no competent evidence to prove that the tax deed under which appellee claimed title was void, and dismissed the appellant's complaint for want of equity. Appellant prosecutes this appeal.

WOOD, J., (after stating the facts). It may be conceded for the purposes of this opinion that if the appellee's tax deed is void for the reasons alleged in appellant's complaint that appellant is the owner of the land and entitled to the relief prayed. But the chancellor was correct in holding that there was no competent evidence in the record to show that the appellee's tax deed was void. The tax deed was regular on its face.

In *Senter v. Greer*, 101 Ark. 301, 302, we said: "The deed of the clerk of the county court, executed substantially as the statute requires, was *prima facie* evidence of title (Kirby's Digest, § 7104), and was sufficient, in the absence of evidence showing that the tax sale was

void, to warrant a court in confirming the title in appellee."

(1) While this was said in a suit to confirm a tax title, the same rule applies where it is sought to cancel a deed regular on its face as a cloud on title. Before appellant could have the affirmative relief of cancellation of appellee's tax title, prayed for in his complaint, the burden was upon him to show that the tax deed of the appellee was void.

(2) Appellant contended in the court below, and contends here, that the tax deed is void for the reason that the taxes on the land in controversy for the year 1910 were paid. This he undertakes to prove in the following manner:

O. L. Nall testified, by deposition, that he was the county clerk of Grant County, and as such was custodian of the records of the county. The records showed that the taxes for the year 1910 were paid. There is a forfeiture indication on the real estate book of the east one-half southwest quarter section 23-6-13, in the name of Fannie Lybrand. He had examined the record of tax receipts for the year 1910, and it showed at page 223 that the taxes on the east one-half of the southwest quarter of section 22-6-13 had been paid for the year 1910 by the Mercantile Trust Company. He had examined the delinquent land record for that year to see whether or not the land in controversy was listed there for the non-payment of taxes and found that the east one-half of the southwest quarter of either 22 or 23 was sold for the taxes for the year 1910. He was asked whether the figures "22" or "23," whichever it might have been, had been changed since the book was made, and answered, "It had been written with a pen section '23' and changed to section '22' by making a lead pencil '2' over the '3.'" Witness did not know whether the change was made before or after the sale. The delinquent record shows that the deed was executed to Lybrand October 27, 1913.

On cross-examination, the witness stated that he had access to the original notice of land sales for delinquent

taxes for the year 1910, and it showed that the land in controversy was published as delinquent for the taxes for the year 1910; that the record of sales had been recorded with pen and ink; that the number of the section had been changed with pencil, but he did not know at what date. The figure "3" was made with a pen and the figure "2" with a pencil. Witness had a record of the tax receipts to correspond with the real estate tax books for each corresponding year. The receipt for the taxes paid for the year 1910 was recorded in receipt record for 1910 on page 223. No date recorded. It was recorded on the record "northwest southwest 22-6-13, 320 acres $560.00." It is a matter of fact from the records that the land in controversy appears upon the records as having been assessed other than the southwest quarter. It is assessed separately. The record of sales conforms, as it now shows, with the notice of sale of delinquent land for the year 1910; but the record might not have conformed with such notice at the date of the recording of the delinquent list. If the record of delinquent lands for the year 1910 had been kept according to the published notice of the land sales for said year the original entry upon the sales book would have shown east one-half southwest quarter 22-6-13, but the record is not kept from the published notice. It is made up from the list returned by the sheriff for non-payment of taxes. The record of delinquent land for the year 1910, from which the witness testified, witness supposes is a copy from the record of the collector, made and filed with the clerk, but witness does not know. If it was correctly kept it would be a true copy, and the notice of sale made by the clerk would also be a true copy. Witness had not made a diligent search through his office for the original delinquent list of lands for non-payment of taxes for the year 1910, made by John B. Gean, the collector of Grant County. Witness was deputy clerk at that time, but did not remember seeing the delinquent list. He must have seen it, however, as he wrote the delinquent record. A majority of the records of lands re-

turned delinquent for the year 1910, if not all, is in witness' handwriting.

John B. Gean testified, also by deposition, that he was sheriff and collector of Grant county in the year 1911. The real estate tax record for the year 1911 shows the east one-half of the southwest quarter section 22, township 6 south, range 13 west, in the name of V. V. Stockton, as having been paid for that year. On the real estate book it is marked "paid" and shows the date paid and the page the receipt was recorded on. If the taxes were not paid on any tract that was indicated by a small circle, thus "O." "If the records are like I left them, then if the land in controversy is marked by figures indicating the page upon which the receipt was recorded and the date of payment of the taxes such is a good indication that such piece of land did not forfeit." As collector of Grant county, when the owner of a piece of land paid the taxes, witness always marked the tract paid on the tax book and gave the owner a receipt for the same. If the owner did not pay in the time required by law witness returned the tract delinquent, and it was advertised by the clerk as such and witness, as collector, sold it at public outcry at the courthouse, as provided by law. And when a tract of land was sold by him for the delinquent taxes he executed to the purchaser a certificate to such tract. It was not his custom to receive taxes twice on the same tract of land for the same year. Witness had occasion to examine the sale record of lands sold for non-payment of taxes for the year 1910, in which it appears that the land in controversy was sold to John W. Lybrand, and in which it appears that the numbers of the land in controversy are correct, and that the record seems to have been tampered with. Since the sale of the lands for the delinquent taxes of the year 1910 witness had seen his advertisement of such lands and the east one-half of the southwest quarter of section 22, township 6 south, range 13 west, was advertised as delinquent. Since the sale of the lands in controversy the sale records seem to have been tampered with,

but witness did not remember whether it was changed from 22 to 23 or 23 to 22. Witness' recollection is that in making a return of the tract in controversy he made it as section 22-6-13. The delinquent list witness filed with the clerk is correct. Witness does not know what it is. Witness was asked this question: "If the real estate records of 1910 show the east one-half of the southwest quarter of section 22-6-13 as having been paid on as required by law and the east one-half of the southwest quarter of section 23-6-13 is returned delinquent on said record then your recollection as to it being east one-half southwest quarter section 22, is wrong is it not?" and answered, "I will just say that the delinquent list I filed with the clerk is correct. I do not know what it is."

Now if the taxes were paid on the land in controversy for the year 1910, the above testimony shows that there was an original tax receipt issued showing such payment and a record made of this receipt, and the appellant does not show that the original tax receipt was lost or destroyed or that it was beyond his power to produce same in evidence. There is copied into the transcript what purports to be a tax receipt for the taxes of the year 1910, showing payment by the Mercantile Trust Company, but this purported receipt is not signed by the collector and is nowhere in the testimony identified as the original tax receipt or as a correct copy thereof. In fact, this purported tax receipt, for the purposes of proof, is of no more probative force than a blank piece of paper, and cannot be considered.

Neither the tax records nor any authenticated copies thereof were filed and brought into the record as a part of the evidence of the witnesses who testified about them.

(3) The only other evidence in regard to the payment of the taxes found in the record is a certificate of the sheriff and collector to the effect that he had examined the tax records in his office for the years 1903 to 1910, inclusive, and that they showed that the taxes on the lands in controversy were regularly paid for each of said years, and that the lands were not returned delinquent

for the non-payment of taxes for the year 1910, and were not marked delinquent on the real estate record. But the chancellor found that the witnesses were not brought into court; that the certificate was not taken as a deposition; that no notice was given to the defendant when it was made; that it was not sworn to, and that in such certificate he made no profert of the record itself or presented any certified copies of the record about which he testified. The chancellor correctly held, upon these findings, that the certificate was incompetent to be considered as evidence in the cause.

All this testimony of the clerk and sheriff was duly objected to when it was offered as being incompetent and the court correctly ruled that, in the form presented, it was incompetent.

There being no competent evidence in the record to warrant the cancellation of appellee's deed it follows that the trial court was correct in so holding and its decree is therefore affirmed.