ARKANSAS STATE GAME & FISH COMMISSION v. KIZER.

4-9921 253 S. W. 2d 215

Opinion delivered December 15, 1952.

*Ed E. Ashbaugh,* for appellant.

*John L. Anderson,* for appellee.

ED. F. McFADDIN, Justice. This case involves the water level of Old Town Lake in Phillips County. Since the decree of the Chancery Court must be reversed on procedural points, we mention only the facts involving such points.

Appellees, Kizer, et al., as affected land owners, brought suit in the Chancery Court against the Commissioners of the White River Drainage District of Phillips and Desha Counties, and alleged that the Drainage District, by means of a flood gate, had raised the water level in Old Town Lake from the former level of 159[1] feet to the present level of 164[1] feet. The relief prayed was that the water level be fixed at 159 feet. In the answer, the Drainage District and its Commissioners professed a willingness to fix the water level of the Lake at whatever elevation the Court might decree.

---

[1] In this opinon all figures as to the water level refer to the elevation above mean sea level, unless otherwise indicated.

Then Toney and other riparian (littoral) land owners (hereinafter referred to as "Intervening Landowners") intervened, claiming that the water level óf Old Town Lake should be fixed at 169 feet. The Arkansas State Game & Fish Commission (hereinafter called "Commission") also intervened; and claimed that the Commission was interested in the fish life of Old Town Lake and that the water level should be maintained at 169 feet. All through the case the Intervening Landowners and the Commission[2] made common cause as litigants. The Drainage District and its Commissioners were all the time willing to any water level that the Court might fix.

More than a score of witnesses testified *ore tenus;* and at the conclusion of the hearing the Chancery Court, on September 5, 1951, appointed three engineers "to make a fair and impartial survey of Old Town Lake and to make their recommendation to the Court for his approval or disapproval . . ." The Intervening Landowners and the Commission objected and excepted to this order. On January 17, 1952, the three engineers filed their signed but unverified report, reading in part:

"That we have made a thorough study of the available records and gauge readings of Old Town Lake covering a period of the past 10 years; that we have, in conjunction with said study, examined the topography of adjoining lands and hydrographs showing the water elevations of said Lake for the years 1942 to 1950; that in addition thereto we have taken soundings to determine the depth of the water in Old Town Lake, and we have concluded that the average normal water level, before the control structure was in operation was 162 feet, mean gulf level,[3] exclusive of extreme high and low stages."

---

[2] A question not presented in the briefs, but one which arose in the consultation in this Court, is the power of the Commission to resist any reasonable order fixing the water level in Old Town Lake. We forego any discussion on this point since the intervening landowners had the right to be heard in regard to fixing the water level, and they have appealed to this Court. We mention the matter only for the purpose of negativing any idea that the present opinion is a holding either way on the question.

[3] "Mean gulf level" would be less than 3/10ths of a foot higher than "mean sea level" in Old Town Lake.

The Intervening Landowners and the Commission, in their pleading against the report, said, *inter alia:*

"That at the conclusion of the trial of this case the plaintiffs, the defendants, and the interveners announced that they had each concluded all matters concerning them and submitted the case to the court for final decision. That the court instead of deciding the case determined to appoint a board composed of three engineers to go further into the matter and fix the average water level of Old Town Lake. That at that time the interveners objected to the appointment of such board and stated that they would have no opportunity to cross-examine said engineers. . . . That the interveners have had no opportunity to cross-examine said engineers and that the court is without power at law or in equity and is without jurisdiction to appoint said board of engineers or to allow the filing of said report."

The Chancery Court heard no further evidence; and on March 11, 1952, entered the decree, which (a) adopted the engineers' report *in toto,* (b) fixed the water level of Old Town Lake at 162 feet, (c) denied the appellants' motion to strike the engineer's report, and (d) refused the Intervening Landowners and the Commission any opportunity to cross-examine the engineers on their said report. From such decree, there is this appeal.

The Chancery decree must be reversed because of the refusal of the Court to allow the Intervening Landowners to cross-examine the engineers on their report, after the Court admitted it in evidence. Of course, the report, as offered, was not admissible. It was the *ex parte* statement of the three engineers, and should not have been admitted as evidence until the parties making the report appeared as witnesses. In *Newman* v. *Lybrand,* 130 Ark. 424, 197 S. W. 855, there was offered a certificate of the Sheriff and Tax Collector:

". . . to the effect that he had examined the tax records in his office for the years 1903 to 1910, inclusive, and that they showed that the taxes on the lands in controversy were regularly paid for each of said years, and that the lands were not returned delinquent for the

nonpayment of taxes for the year 1910, and were not marked delinquent on the real estate record.''

In the reported case, the Chancery Court refused to allow the certificate to be considered as evidence; and on appeal, we affirmed the ruling, saying:

''But the chancellor found that the witnesses were not brought into court; that the certificate was not taken as a deposition; that no notice was given to the defendant when it was made; that it was not sworn to, and that in such certificate he made no profert of the record itself or presented any certified copies of the record about which he testified. The chancellor correctly held, upon these findings, that the certificate was incompetent to be considered as evidence in the cause.''

Likewise in *Trannum* v. *George,* 211 Ark. 665, 201 S. W. 2d 1015, there was offered as evidence in a child custody case ''the *record,*'' which was a narrative report by the welfare worker. We held this report was inadmissible. Mr. Justice Robins said:

''This 'record' is chiefly a narrative report by the welfare worker of conversations she had concerning the case of the children with various parties and it also contains correspondence had with the mother of the children. All this was 'hearsay' and should not have been admitted in evidence. Certainly the custody of a man's children ought not to be taken away from him on unsworn statements made out of court. *Title Guaranty & Surety Company* v. *Bank of Fulton,* 89 Ark. 471, 117 S. W. 537, 33 L. R. A., N. S. 676; *Tipler-Grossman Lumber Company* v. *Forrest City Box Company,* 148 Ark. 132, 229 S. W. 17; *Spencer Lumber Company* v. *Dover,* 99 Ark. 488, 138 S. W. 985; *Shelton* v. *Shelton,* 102 Ark. 54, 143 S. W. 110; *Roberson* v. *Roberson,* 188 Ark. 1018, 69 S. W. 2d 275.''

The report of the engineers in the case at bar is in the same category as that of the Sheriff and the welfare worker in the two reported cases.[4] The engineers' re-

---

[4] In *Fewel* v. *Fewel,* 23 Calif. 2d 431, 144 Pac. 2d 592, the Supreme Court of California discussed the necessity of investigators appearing in Court to authenticate a report and to be subjected to cross-examination.

port was not admissible as evidence, and yet it contained the information on which the Court fixed the water level at 162 feet.

But when the Court admitted the engineer's report as evidence, then, certainly the Intervening Landowners had the right to cross-examine the engineers; and the denial of such right requires a reversal of the decree. In 58 Am. Jur. 340, the holdings of various jurisdictions are summarized in this language:

"In a judicial investigation the right of cross-examination is absolute, and not a mere privilege of the one against whom a witness may be called. In a civil action a party has the right to cross-examine witnesses against him whether the evidence is given *ore tenus* or by deposition."[5]

In *Ottawa* v. *Stewart,* 70 U. S. (3 Wall.) 268, 18 L. Ed. 165, Mr. Justice CLIFFORD used this clarifying language:

"Cross-examination is the right of the party against whom the witness is called, and the right is a valuable one as a means of separating hearsay from knowledge; error from truth; opinion from fact, and inference from recollection, and as a means of ascertaining the order of the events as narrated by the witness in his examination in chief; and the time and place when and where they occurred, and the attending circumstances; and of testing the intelligence, memory, impartiality, truthfulness and integrity of the witnesses; . . ."

See, also, *Babirecki* v. *Virgil,* 97 N. J. Eq. 315, 127 Atl. 594, 39 A. L. R. 171; and *State ex rel. Bailes* v. *Guardian Realty Co.,* 237 Ala. 201, 186 So. 168, 121 A. L. R. 634; and see also Annotations in 15 L. R. N. S. 493 and 25 L. R. N. S. 683.

Because the appellants were not allowed the right to cross-examine the engineers, we reverse the decree and remand the cause to the Chancery Court. But the

[5] In the present opinion, we are referring only to civil cases. In criminal cases the right of confrontation is guaranteed by Art. 2, § 10 of the Constitution of Arkansas. For a few criminal cases on confrontation and the right of cross-examination, see *Jones* v. *State,* 204 Ark. 61, 161 S. W. 2d 173; *Alford* v. *U. S.,* 282 U. S. 687, 75 L. Ed. 624, 51 S. Ct. 218.

hearing on remand is limited:[6] (a) the Chancery Court will call the engineers to testify in order to make their report admissible; and (b) then the Litigants will be allowed the right of cross-examination. On the present record plus that made on remand as above indicated, the Chancery Court will render its decree. The amount of fee to be allowed the engineers and the propriety of taxing the fee as costs on a pro rata basis are matters not foreclosed by the present decision.

The costs of the present appeal are assessed against the parties who were plaintiffs in the lower Court.

---

[6] Some other cases in which Chancery decrees were remanded for further proceedings on a particular point are *Carmack* v. *Lovett,* 44 Ark. 180; *Turman* v. *Bell,* 54 Ark. 273, 15 S. W. 886; *Carlile* v. *Corrigan,* 83 Ark. 136, 103 S. W. 620; and *Foster* v. *Graves,* 168 Ark. 1033, 275 S. W. 653.