## In re PAULA G.

## No. 94–251–M.P.

Supreme Court of Rhode Island.

March 18, 1996.

Frank P. Iacono, Jr., Ellen R. Balasco, Anthony E. Angeli, Jr., Providence, for Plaintiff.

Joseph Palmieri, H. Jefferson Melish, Wakefield, for Defendant.

## OPINION

MURRAY, Justice.

This matter came before the Supreme Court by way of a petition of the plaintiff, the Department of Children, Youth, and Families (the department), for certiorari. The department seeks review of a Family Court decree in which a justice ordered Paula G. (Paula), a minor child in its care, custody, and control, to be put into a foster home in the State of Florida without having first obtained the consent of the appropriate public authorities on the placement of children in that state pursuant to the provisions of the Interstate Compact on the Placement of Children (ICPC or the compact), G.L.1956 § 40–15–1. We find that the Family Court justice erred in failing to comply with the provisions of the ICPC when he ordered the placement of Paula in Florida without the prior consent of the appropriate public authorities on the placement of children in that state. The facts giving rise to the petition follow.

Paula was committed to the care, custody, and control of the department on April 20, 1992, on the basis of dependency. Later, on April 20, 1993, Paula was returned to the custody of her mother. She remained however under the legal supervision of the department. In August 1993 Paula and her mother moved to the State of Florida without the knowledge or the approval of the department. While in Florida, Paula and her mother lived with Herbert Sawtelle (Sawtelle), a person unrelated to Paula who was at one time a foster-care provider for Paula's brother, John, in Rhode Island. Sawtelle was not licensed to provide foster care in Florida.

Upon learning of Paula's relocation to Florida and her residency with Sawtelle, the department initiated an ICPC request with Florida authorities pursuant to § 40–15–1. On March 29, 1994, the department's request was denied by Florida public authorities on the basis that the housing provided by Sawtelle was inadequate and inappropriate. Moreover, Florida authorities warned the department that the placement of Paula in Sawtelle's Florida home violated the terms of the ICPC and that Florida would not take responsibility for her well-being.

Subsequently the department learned that Paula's mother had returned to Rhode Island leaving Paula in Florida. The department then sought an ex parte order in the Family Court to have Paula returned to Rhode Island and subject to its care, custody, and control. The department's motion to change custody was granted by the Family Court on April 19, 1994, and the department was ordered to obtain a home study of Sawtelle's residence. Thereafter, on April 21, 1994, a Family Court justice ordered that

"(1) Paula * * * shall be returned to Florida by the DCYF Social Caseworker on or about April 23, 1994 and shall be temporarily placed in the home of Herbert Sawtelle, pending further action by this Court."

"(2) DCYF shall initiate through the Interstate Compact agreement a full home study and foster placement evaluation of the Sawtelle home by the Florida [childplacement authorities]."

"(3) Parent child evaluation of Herbert Sawtelle, Paula and [her brother] John * * * shall be arranged through DCYF, in addition to a sexual abuse evaluation for Paula only * * *."

In response to the orders contained in the Family Court decree, the department sought a stay in this court, which was granted by a single justice on April 22, 1994. In an order entered by the single justice, the department was directed to "take such steps as are reasonably necessary to obtain a reevaluation of the Florida home in which Paula G. is to be placed, such reevaluation to be conducted by the Florida Department of Health and Rehabilitative Services. Upon completion thereof, the reevaluation shall be filed with this court, at which time the stay issued by the duty judge will be reconsidered."

The department thereafter sought a preliminary study of Sawtelle's home and again requested an interstate compact on April 26, 1994, for the placement of Paula with Sawtelle in Florida. The Florida ICPC request was merged with an application that Sawtelle had submitted in May 1994 for a foster-care license in that state.

Subsequently, by order dated May 5, 1994, this court denied the department's motion for a continuation of the stay "[i]n light of the circumstances as they appear from the papers on file, particularly as they relate to the best interest of the child." The department's petition for certiorari was, however, granted.

Following this court's May 5, 1994 order, Paula was returned to Sawtelle's Florida home, where she resided until the home in which they were living was severely damaged, rendering it completely uninhabitable. Thereafter, Paula requested that the department return her to Rhode Island. She returned to this state and has resided in a group facility since her return.

In light of the circumstances necessitating Paula's return to this state, the department sought a review of Paula's case in the Family Court on July 12, 1994. The Family Court justice vacated the April 21, 1994 order pending the completion of an ICPC request and home study of Sawtelle by Florida public authorities.

Later, in October 1994, Sawtelle was denied foster-care licensure by Florida public authorities, and in March 1995 the department was notified by Florida public authorities that the ICPC request was denied.

In its petition for certiorari the department contends that the Family Court justice erred in placing Paula in Sawtelle's Florida home without an approved ICPC request. We note that although the department is the only party which filed an appellate brief, Paula's court-appointed guardian ad litem appeared at oral argument and similarly voiced objection to the Family Court justice's April 21, 1994 order to place Paula in Sawtelle's

home without having first obtained an approved ICPC request.

■ As an initial matter, the department concedes, and the record indicates to us, that the issue presented in the instant case has become moot. As noted above, the Family Court justice who had ordered Paula's placement in Sawtelle's home vacated that portion of the order on July 12, 1994. It is, of course, the general rule that "we only consider cases involving issues in dispute; we shall not address moot, abstract, academic, or hypothetical questions." *Morris v. D'Amario*, 416 A.2d 137, 139 (R.I.1980). This rule is, however, subject to certain exceptions. Questions of extreme public importance that are, although moot, which are capable of repetition but evade review, warrant our attention and will be addressed. *Id.* The issue before us is certainly capable of repetition, and we find it a matter of extreme public importance to clarify the obligations of the Family Court in similar situations in the future.

The ICPC was enacted into law in this state in 1967 and was entered into with all other jurisdictions legally joined. As stated in G.L.1956 § 40–15–1, Article I(b) (the compact), "It is the purpose and policy of the party states to cooperate with each other in the interstate placement of children to the end that: * * * [t]he appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child." As a condition for placement, "[p]rior to sending, bringing, or causing any child to be sent or brought into a receiving state for placement in foster care * * * the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state." *Id.* at Article III(b). "The child *shall not* be sent, brought, or caused to be sent or brought into the receiving state until the appropriate pub-

lic authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." (Emphasis added.) *Id.* at Article III(d). Pursuant to the definition section of the compact, state courts are among the entities subject to its provisions.[1]

■ In the instant case at the time the Family Court justice ordered Paula's placement in Sawtelle's home, he was apparently a licensed foster-care provider in this state. We believe that fact may have influenced the justice who made this decision pursuant to an exigent ex parte motion by the department. However, because the trial justice's order to place Paula in Florida was without the prior consent of that state, the trial justice's order manifestly violated the terms of the compact and was therefore illegal.

Article IV of § 40–15–1 (the compact) outlines penalties for illegal placement and provides that

"[t]he sending, bringing, or causing to be sent or brought into any receiving state of a child in violation of the terms of [the] compact shall constitute a violation of the laws respecting the placement of children of both the state in which the sending agency is located or from which it sends or brings the child and of the receiving state. Such violation may be punished or subjected to penalty in either jurisdiction in accordance with its laws. In addition to liability for any such punishment or penalty, any such violation shall constitute full and sufficient grounds for the suspension or revocation of any license, permit, or other legal authorization held by the sending agency which empowers or allows it to place, or care for children."

Because the penalties for illegal placement are considerable and would necessarily have adverse consequences on the placement of juveniles from this state in other jurisdictions, those entities subject to its provisions

---

1. General Laws 1956 § 40–15–1, Article II(b) delineates the entities subject to the provisions of the compact. The sending agencies subject to its provisions are "a party state, or officer or employee thereof; a subdivision of a party state, or officer or employee thereof; a court of a party state; a person, corporation, association, charitable agency or other entity which sends, brings, or causes to be sent or brought any child to another party state."

must not deviate from its terms. Although the facts of this specific case are moot, we shall remind the Family Court of its responsibility to observe and to fulfill the purpose and the policy of the ICPC by ensuring that its procedural provisions are effectively adhered to in the future.

For these reasons the petition for certiorari is granted, and the papers of the case are remanded to the Family Court with our decision endorsed thereon.