# ARKANSAS DEPARTMENT of HUMAN SERVICES
## *v.* Rose HUFF

00–1357 65 S.W.3d 880

Supreme Court of Arkansas
Opinion delivered February 7, 2002

*Dana McClain*, for appellant.

*Paul R. Post*, for appellee.

A NNABELLE CLINTON IMBER, Justice. This case is on appeal from the August 16, 2000, order of the Chancery Court of Sebastian County, Fort Smith District, Juvenile Division, wherein the trial court returned seven children to their mother and closed the case. The questions before us are whether a Colorado home study was properly excluded from evidence by the trial court and whether the Interstate Compact on the Placement of Children (ICPC), Ark. Code Ann. §§ 9-29-201 *et seq.* (Repl. 1998), applies to court-ordered placement of children with an out-of-state parent. Based upon the trial court's authority under Ark. R. Evid. 403 to weigh the relevance of the evidence against the potential for prejudice and the plain language of the ICPC, we affirm the trial court.

Rose Huff requested assistance from the Arkansas Department of Human Services (ADHS) in July 1998. Ms. Huff had seven young children, the youngest of which had just been born prematurely and was still in the hospital. She was unemployed, homeless, and without transportation. Ms. Huff was walking around all day with six of the young children because they were not allowed to stay at the Salvation Army during the day. ADHS filed a petition for emergency custody of the children, requesting that the children be declared dependent-neglected. An *ex parte* order entered on July 31, 1998, placed the children in the custody of ADHS and appointed a guardian *ad-litem* for them.

On August 17, 1998, the trial court issued a probable cause order granting custody of the seven children to ADHS. Ms. Huff's oldest daughter had previously been sent to Colorado to live with some of Ms. Huff's family. After ADHS took custody of the other children and the trial court entered its adjudication order on September 21, 1998, finding the children dependent-neglected as defined in the Arkansas Juvenile Code, Ms. Huff moved to Colorado. The seven young children were subsequently placed in the homes of Ms. Huff's mother and aunt in Colorado through the ICPC. Due to a disruption, the children were returned to Arkansas less than three months later and placed in foster care. The case plan implemented called for reunification of the children with Ms. Huff. It required her to visit the children once per week by telephone and one weekend per month in person. ADHS provided air transportation for the monthly visits. Ms. Huff was ordered to maintain a stable income, maintain appropriate and stable housing, seek counseling, seek treatment for alcohol addiction, and visit with the children as ordered.

In September 1998, Ms. Huff found employment in Colorado, which she maintained through the August 2000 hearing. She also obtained housing. Ms. Huff attended nine of fifteen scheduled counseling appointments and then was dropped from the counseling program due to non-attendance. She also attended five of twelve drug and alcohol screenings before being dropped from the screening program due to missed appointments. Ultimately, she obtained reports reflecting that no further counseling was necessary. She completed a parenting class and visited her children each month. On July 22, 1999, after concluding that Ms. Huff had made progress in complying with the case plan, the trial court decided that the goal of reunification was still in the best interests of the children. On September 2, 1999, however, the court determined that continuation of custody with ADHS was necessary for the children's health and safety.

ADHS filed a petition for termination of parental rights on September 27, 1999, because the children had been out of the home for more than one year and reunification efforts had been unsuccessful. A termination of parental rights hearing was held on December 6, 1999. The trial court terminated the parental rights of the father, but denied ADHS's request to terminate the parental rights of Ms. Huff. In addition to existing requirements set by the court, Ms. Huff was ordered, as of May 8, 2000, to begin paying her own transportation expenses for her monthly visits with the children. At the December 6 hearing, ADHS proffered the results

of a home study conducted on Ms. Huff's home in Colorado pursuant to the ICPC. The study revealed that Colorado officials found the home to be inappropriate and would deny placement under the ICPC. The trial court refused to admit the home study into evidence based upon the fact that no witness was present to be cross-examined as to its findings.

Following a review hearing on August 8, 2000, the trial court concluded that Ms. Huff had complied with the case plan and prior orders of the court "by cooperating with the Department, maintaining stable employment and housing, [paying] for her own travel expenses to visit, [making] all visits, [having] phone contact with the children and [providing] two drug assessments at this hearing," and ordered that custody of the children be returned to her. Based upon its finding that the family required no further services, the trial court closed the case. ADHS now appeals from that order entered on August 16, 2000.

## I. Jurisdiction

The appellant claims that the trial court erred by not admitting the Colorado home study into evidence. Ms. Huff argues that the issue of admissibility of the home study is not properly before this court. While the home study was proffered at the termination of parental rights hearing on December 6, 1999, Ms. Huff maintains that ADHS is barred from raising the issue on appeal because the study was not proffered at the August 8, 2000 hearing from which this appeal is taken.

Arkansas Rule of Appellate Procedure—Civil 2(c)(3) is determinative of which orders resulting from juvenile hearings are final appealable orders. Under that rule, orders resulting from termination of parental rights hearings (in juvenile cases where an out-of-home placement has been ordered) are final appealable orders. Ark. R. App. P.—Civ. 2(c)(3)(C). A notice of appeal must be filed within thirty days from entry of the judgment, decree, or order appealed from. Ark. R. App. P.—Civ. 4(a). Thus, Ms. Huff argues that ADHS should have appealed the court's ruling on the admissibility of the home study within thirty days following the trial court's entry of its order terminating parental rights and review order on December 13, 1999.

This court has held that, where an issue was not addressed below, we will not consider it for the first time on appeal.

*See B. C. v. State*, 344 Ark. 385, 40 S.W.3d 315 (2001). ADHS could have appealed the trial court's refusal to terminate parental rights under Ark. R. App. P.—Civ. 2(c)(3)(C), but it chose only to dispute the August 16 order returning custody of the children to Ms. Huff. While it is true that ADHS neither offered nor proffered the home study at the August 8 hearing, the issue of the home study was ruled on by the trial court at the August 8 hearing. ADHS attempted to introduce into evidence a "Court Report" which stated: "The Department recommends that all seven Huff children remain in foster care. The ICPC home study in Colorado on Rose Huff's home has been denied for the third time." Ms. Huff's counsel objected to the portion of the report referring to the home study, as the court had already decided at the December 6 hearing that the home study would not be admitted into evidence without the presence of someone who could be cross-examined as to its contents. The court then ordered that the portion .of the report referring to the home study be stricken. In addition, at the conclusion the August 8 hearing, counsel for ADHS objected to placing the children in Colorado without an approved ICPC home study. The court replied: "I don't think it's required when the custody has been placed with the mother. We're not asking Colorado to provide a thing." The record shows that the admissibility of the home study was before the trial court at the August 8 hearing, and thus, the issue is properly before this court.

## II. Admissibility of Home Study

■■ ADHS asserts that the trial court abused its discretion in refusing to admit the Colorado home study into evidence as a business record under Ark. R. Evid. 803(6) or as a public record or report under Ark. R. Evid. 803(8). We review evidentiary errors under the abuse-of-discretion standard. *Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998). The trial court has broad discretion in its evidentiary rulings; hence, the trial court's findings will not be disturbed on appeal unless there has been a manifest abuse of discretion. *Id.*

■ At the December 6 hearing, ADHS attempted to introduce the home study, and Ms. Huff's counsel objected based on the fact that the person who prepared the report was not going to be available to testify and be cross-examined. ADHS argued that the report was admissible under either Rule 803(6) or 803(8). The hearsay exceptions in Rule 803 include an exception for business records:

(6) *Records of Regularly Conducted Business Activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses [sic], made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Ark. R. Evid. 803(6). This court has previously stated seven factors which must be present for the records to be admissible under Rule 803(6): (1) record or other compilation, (2) of acts or events, (3) made at or near the time the act occurred, (4) by a person with knowledge (or from information transmitted by such a person), (5) kept in the course of a regularly conducted business, (6) which has a regular practice of recording such information, (7) all as shown by the testimony of the custodian or other qualified witness. *Cates v. State*, 267 Ark. 726, 589 S.W.2d 598 (1979).

Rule 803 also includes an exception for public records and reports. Under Ark. R. Evid. 803(8), "records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, . . . or factual findings resulting from an investigation made pursuant to authority granted by law" are not excluded by the hearsay rule. However, the following are specifically excepted from the Rule and are considered to be hearsay: "(ii) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party . . . (v) any matter as to which the sources of information or other circumstances indicate lack of trustworthiness." Ark. R. Evid. 803(8).

 We need not, however, address whether the Colorado home study is a business record or a public record or report. The fact that a piece of evidence falls within an exception to the rule against hearsay does not equate to automatic admissibility. *Lovell v. Beavers*, 336 Ark. 551, 987 S.W.2d 660 (1999). To prevent possible prejudice or confusion, a trial court must still have the authority to exclude a record under Ark. R. Evid. 403. *Id.* Rule 403 provides: "Although relevant, evidence may be excluded if its probative value

is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403. This court has held that the weighing under Rule 403 is left to the trial court's sound discretion and will not be reversed absent a showing of manifest abuse. *Lovell v. Beavers, supra.* We have quoted favorably from *McCormick on Evidence* § 293 (4th ed. 1992):

> [W]here there are indications of lack of trustworthiness, which may result from a lack of expert qualification or from lack of factual support, exclusion is warranted under [Rule 803]. Moreover, inclusion of opinions or diagnoses within [Rule 803] only removes the bar of hearsay. In the absence of availability of the expert for explanation and cross-examination, the court may conclude that probative value of this evidence is outweighed by the danger that the jury will be misled or confused. This is of particular concern if the opinion involves difficult matters of interpretation and a central dispute in the case, such as causation. Under these circumstances, a court operating under the Federal Rules, like earlier courts, is likely to be reluctant to permit a decision to be made upon the basis of an un-cross-examined opinion and may require that the witness be produced.

*Lovell v. Beavers,* 336 Ark. at 555, 987 S.W.2d at 662. Here, the trial court identified the problem with admissibility of the home study: "we don't have that person here to cross-examine and evaluate as to all of their motives and their thinking . . . you have to be able to weigh the credibility."

██ ██ Even prior to the enactment of the Arkansas Rules of Evidence, this court recognized the importance of cross-examination. In *Arkansas Game & Fish Comm'n v. Kizer,* 221 Ark. 347, 253 S.W.2d 215 (1952), this court held that landowners had a right to cross-examine the engineers who authored a survey regarding a lake at issue in the case. We said: "In a judicial investigation the right of cross-examination is absolute, and not a mere privilege of the one against whom a witness may be called. In a civil action a party has the right to cross-examine witnesses against him whether the evidence is given *ore tenus* or by deposition." *Id.* at 351, 253 S.W.2d at 218. Similarly, in *Trannum v. George,* 211 Ark. 665, 201 S.W.2d 1015 (1947), where a narrative report composed by a welfare worker was offered as evidence in a child custody case, this court stated: "Certainly the custody of a man's children ought not to be taken away from him on unsworn statements made out of court."

*Id.* at 671, 201 S.W.2d at 1018. *See also Roberts v. Roberts*, 216 Ark. 453, 226 S.W.2d 579 (1950).

 The right of cross-examination is especially important in cases such as *Trannum v. George* where a fundamental liberty is at issue. The United States Supreme Court has commented on termination of parental rights:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982). In the case now before us, the central issue before the trial court was the potential termination of Ms. Huff's parental rights. A fundamental liberty interest was at issue, and the court concluded that introduction of the Colorado home study would be too prejudicial in the absence of someone who could be cross-examined as to its contents. The trial court did not abuse its discretion by refusing to admit the Colorado home study into evidence.

### III. Application of ICPC

 ADHS contends that the trial court violated the ICPC when it caused Ms. Huff's children to be sent to Colorado without Colorado's approval. The validity of this argument depends upon whether the ICPC applies in situations where a trial court is returning custody of children to an out-of-state natural parent. Appellate courts review chancery courts de novo on the record, but a decree is not reversed unless the chancellor's findings are clearly erroneous. *Terry v. Lock*, 343 Ark. 452, 37 S.W.3d 202 (2001).

At issue here, according to ADHS, is Article III of the ICPC, which describes the conditions for placement under the ICPC. Article III states, in relevant part:

(a) No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein.

\* \* \* \*

(d) The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.

Ark. Code Ann. § 9-29-201(III) (Repl. 1998). As in *McComb v. Wambaugh*, 934 F.2d 474 (3d Cir. 1991), the question before us is whether the ICPC applies when a court in one state directs that a child be taken from foster care and sent to a natural parent in another participating state.

ADHS incorrectly contends that this is an issue of first impression in Arkansas. This court addressed the applicability of the ICPC in *Nance v. Ark. Dep't Human Servs.*, 316 Ark. 43, 870 S.W.2d 721 (1994). In that case, a mother living in Arkansas appealed an order of the juvenile court placing custody of her daughter with her former husband in Texas. The question before this court was whether the juvenile court, having found a child to be dependent-neglected, had the authority to make an award of custody of the child as between two competing parents. *Id.* On appeal, Ms. Nance argued that the mandatory provisions of the ICPC were not complied with when custody was placed with her husband in another state. *Id.* This court held that subsection (a) of Article III of the compact "makes it clear that it is meant to deal with children who are sent from a sending state into a receiving state 'for placement in foster care or as a preliminary to a possible adoption.'" *Id.* at 52-A, 870 S.W.2d at 725.

Similarly, in *McComb v. Wambaugh, supra*, the United States Court of Appeals for the Third Circuit concluded that the ICPC does not apply when a court in one state directs that a child be taken from foster care and sent to a natural parent in another participating state. The *McComb* court focused on Article III(a) of the Compact, quoted above, and held that, by its plain language,

the scope of the Compact is limited to foster care or dispositions preliminary to an adoption.[1] *Id.* The federal appellate court noted the definition of "placement" in Article II(d):

> the arrangement for the care of a child in a family, free or boarding home or in a child-caring agency or institution but does not include any institution caring for the mentally ill, mentally defective or epileptic or any institution primarily educational in character, and any hospital or other medical facility.

*Id.* at 480. *See* Ark. Code Ann. § 9-29-201(II)(d) (Repl. 1998). The court acknowledged that the Association of Administrators of the Interstate Compact on the Placement of Children (AAICPC) adopted what is known as Regulation 3, stating that " 'placement' as defined in Article II(d) includes the arrangement for the care of a child in the home of his parent, other relative, or non-agency guardian in a receiving state when the sending agency is any entity other than a parent, relative, or non-agency guardian making the arrangement for care as a plan exempt under Article VIII(a) of the Compact." *McComb v. Wambaugh,* 934 F.2d at 481. A regulation contrary to the statute under which it was promulgated cannot be upheld . *See Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha,* 344 Ark. 44, 38 S.W.3d 356 (2001). The *McComb* court concluded that the regulation expands the scope of the Compact beyond that set out in Article III.[2] *McComb v. Wambaugh, supra.* We agree.

Based upon this court's holding in *Nance v. Ark. Dep't Human Servs., supra,* and the federal appellate court's holding in *McComb v. Wambaugh, supra,* as well as the plain language of the statute, we hold that the Compact, read as a whole, was intended only to govern placing children in substitute arrangements for parental care, such as foster care or adoption.[3] As summarized by

---

[1] The Court of Appeals for the Sixth District of California has likewise held that the ICPC is intended to apply only to interstate placements for foster care and those preliminary to a possible adoption, not to placements with a parent. *In re Johnny S.,* 47 Cal. Rptr. 2d 94 (1995).

[2] The *McComb* court also pointed out that "[t]o construe the return of a child to his or her parent as a 'placement' within the Compact would result in the anomalous situation of imposing a financial obligation upon a sending state that supersedes parents' duty to support their children." *McComb v. Wambaugh,* 934 F.2d at 480.

[3] While several courts have concluded that the ICPC applies to out-of-state placements with natural parents, we reject their interpretation of the ICPC and conclusion regarding its applicability. Such an interpretation is contrary to the plain language of the statute. *See, e.g., K.D.G.L.B.P. v. Hinds County Dep't of Human Servs.,* 771 So. 2d 907 (Miss. 2000); *Matter of Shaida W.,* 85 N.Y.2d 453, 649 N.E.2d 1179, 626 N.Y.S.2d 35 (1995); *In re Paula G.,* 672 A.2d 872 (R.I. 1996).

the *McComb* court: "the Compact does not apply when a child is returned by the sending state to a natural parent residing in another state. The language in Article III is unambiguous. . . ." *McComb v. Wambaugh*, 934 F.2d at 482. Accordingly, the trial court's finding that custody of the children should be returned to Ms. Huff without Colorado's approval was not clearly erroneous.

Affirmed.