Alicia BENNETT *v.*
The Honorable Linda P. COLLIER

02-1327 95 S.W.3d 782

Supreme Court of Arkansas
Opinion delivered January 23, 2003

---

*Richard Neil Rosen*, Office of Chief Counsel, for Arkansas Department of Human Services.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. On August 20, 2002, respondent Faulkner County Circuit Judge Linda P. Collier held a termination hearing regarding petitioner Alicia Bennett's son, Justin. Although Ms. Bennett's counsel was present, Ms. Bennett was not. Judge Collier entered an order on August 26, 2002, terminating the parental rights of the parents in Justin.[1] That same day at the termination hearing, Judge Collier issued a pick-up order for Ms. Bennett, claiming to possess jurisdiction of the parties. Based upon testimony at the termination hearing that Ms. Bennett was pregnant and using illegal drugs, Judge Collier found that there was probable cause to believe Ms.

---

[1] The court terminated the parental rights of Jeff Harper, the child's putative father, as well as Alicia Bennett's.

Bennett was placing an unborn child at risk of imminent harm due to her drug use. The pick-up order also contained language that the court had terminated the parental rights of the parents in Justin that same day. Ms. Bennett was subsequently picked up and detained in the Faulkner County Detention Center.

On August 29, 2002, Judge Collier conducted a hearing in which it held Ms. Bennett, who was present at the hearing but unrepresented, in criminal contempt of court because of her use of drugs in violation of the court's previous orders requiring her to remain drug-free.[2] The judge ordered her committed to the Faulkner County Detention Center until the birth of the child she was carrying. The judge said: ". . . I'm holding this lady in contempt of Court . . . and she will remain in the custody of the Faulkner County Sheriff, in the Detention Center, until she goes into labor. She'll be taken immediately to the hospital. The baby will be delivered either dead or alive, and she will be released. . . ."

After finding that the unborn fetus "[was] in imminent danger of severe maltreatment and is dependent/neglected as defined by the Arkansas Juvenile Code[,]" Judge Collier placed the fetus in the custody of the Department of Human Services (DHS) and ordered DHS to provide services to Ms. Bennett and the fetus she was carrying. Judge Collier said as part of her ruling:

> "But I can't stop her [Ms. Bennett] from using drugs, but I can keep her off of them until she has this child and by keeping her locked up. And the child is not to leave the hospital with her. But I want her to have an ultrasound, and the Department — this is not going to be billed to the Faulkner County Jail. I want everybody to know that. This is a Department case and I want the Department taking full responsibility for it. She's going to have an ultrasound and other prenatal tests, and I want to know if the baby has any overt signs of malformation. And then I want her to remain in the jail until she goes into labor, and then she's going to be taken directly out to the hospital for delivery."

---

[2] The court's orders mandating that Ms. Bennett remain drug-free in the termination case respecting Justin were not made part of the record in this case.

On August 30, 2002, Judge Collier entered the following order:

> 6. Based on the testimony of the mother, the case worker, and the drug test results which showed drug use during pregnancy, the Court holds Alicia Bennett in contempt of Court for violating previous orders that she remain drug free.
>
> 7. The mother shall remain in the custody of the Faulkner County Sherriff until such time as she gives birth to the child.
>
> 8. The Court finds that the unborn child is in imminent danger of severe maltreatment and is dependent/neglected as defined by the Arkansas Juvenile Code. The Court places the unborn child in the custody of the Department. The Arkansas Department of Human Services shall ensure the mother receives adequate prenatal care and that the mother is examined by a doctor as soon as possible. The Department shall bear the expense of the mother's prenatal care.

Ms. Bennett remained in the detention center. On December 10, 2002, she moved for a belated appeal, or, alternatively, for a writ of *habeas corpus*, on the basis that she was being unlawfully detained. This court temporarily stayed the judge's contempt order and granted her motion for immediate release on December 11, 2002. Now pending before this court for decision is Ms. Bennett's motion for belated appeal, or alternatively, her petition for a writ of *habeas corpus*.

Ms. Bennett raises four points of error in support of her motion/petition: (1) that she was denied counsel in a proceeding where she was entitled to counsel; (2) that she was denied due process when she was "picked up" without notice or an opportunity to defend; (3) that the trial court had no jurisdiction to hold Ms. Bennett in contempt of court; and (4) that the trial court violated her constitutional rights to privacy and bodily integrity.[3]

---

[3] We emphasize that only Ms. Bennett's rights are at issue in this petition. The court's jurisdiction over her unborn fetus is the subject of a currently pending petition for an extraordinary writ filed by DHS. *See Arkansas Dep't of Human Servs. v. Collier*, No. 02-1021. DHS has also filed a brief in the instant case asserting that the trial court was without subject-matter jurisdiction, or exceeded its jurisdiction, when it adjudicated an unborn fetus to be a dependent/neglected juvenile and ordered the unborn fetus into DHS's custody. Because this is the same assertion made in its petition for writ of prohibition, or in

Judge Collier responds that none of Ms. Bennett's arguments needs to be resolved prior to our decision in *Arkansas Dep't of Human Servs. v. Collier*, No. 02-1021, where DHS has petitioned for a writ of prohibition, or, alternatively, for a writ of *certiorari*, on the basis that a fetus is not a juvenile under the Juvenile Code. In fact, Judge Collier asserts that Ms. Bennett's jurisdictional argument can be decided by the disposition of DHS's pending petition in the related case, No. 02-1021.[4] We conclude, nonetheless, that Judge Collier lost jurisdiction over Ms. Bennett to hold her in contempt of court for not remaining drug-free once her rights as a parent to Justin were terminated.

We begin by noting that the incarceration of Ms. Bennett involves two distinct cases. The first case involves Ms. Bennett solely and the judge's placing her in contempt of court for violating her orders to remain drug-free and as mother of the fetus taken into custody. That is the subject matter of the petition in this case, No. 02-1327. The second case is related, *Arkansas Dept. of Human Servs. v. Collier*, No. 02-1021, also decided this date. That case concerns whether Judge Collier acted beyond her authority in finding an unborn fetus to be a juvenile and by placing that fetus in the custody of DHS. There is also the point, which Judge Collier emphasizes in her brief, that Ms. Bennett has been released from jail due to this court's temporary stay of Judge Collier's order. According to Judge Collier, the issue of Bennett's incarceration is now moot. Nevertheless, we address Ms. Bennett's petition in the instant case even though she has been released from jail due to our uncertainty over whether Judge Collier intends to punish Ms. Bennett further for disobeying her orders in the Justin matter.

 With respect to jurisdiction, we conclude that Judge Collier lost jurisdiction over Ms. Bennett to enforce her orders that Ms. Bennett remain drug-free in the Justin case when it ter-

---

the alternative, writ of *certiorari* in case No. 02-1021, there is no need to address the merits of DHS's argument in this case.

[4] Judge Collier also points out that Ms. Bennett's brief fails to include a copy of the order by which she was held in contempt. She is correct. However, DHS's brief filed in this matter does contain the contempt order for this court to review.

minated her parental rights. The judge's termination order was entered August 26, 2002. At that time, Judge Collier also changed the style of the case by deleting Ms. Bennett and Mr. Harper as respondents and noting that the style of the case shall now read: "In Re: *Justin Bennett.*" Our appellate rules provide that an order terminating parental rights is a final, appealable order in juvenile cases where an out-of-home placement has been ordered. *See* Ark. R. App. P.—Civ. 2(c)(3)(C). *See also Arkansas Dep't of Human Servs. v. Huff*, 347 Ark. 553, 65 S.W.3d 880 (2002). A final order is one which dismisses the parties from the court's jurisdiction, discharges them from the action, and concludes their rights in the subject matter in controversy. *See Arkansas Dep't of Human Servs. v. Farris*, 309 Ark. 575, 832 S.W.2d 482 (1992). Because the termination order was a final order that concluded Ms. Bennett's parental rights in her child, Justin, she was no longer subject to the court's jurisdiction after the termination proceedings ended.[5] Thus, Judge Collier had no jurisdiction to hold Ms. Bennett in contempt of court for violating the court's orders that she remain drug free for purposes of protecting Justin.

■ Because Judge Collier had no jurisdiction over Ms. Bennett to hold her in contempt of court, this court's stay of her order was entirely appropriate and a writ of *habeas corpus* should issue. Our review of the record reveals no notice of appeal from the August 30, 2002, order, and there is no basis for a belated appeal in this case. For that reason, her motion for a belated appeal is denied.

Motion for belated appeal denied. Petition for writ of *habeas corpus* granted.

---

[5] We have held this same day in *Arkansas Dep't of Human Servs. v. Collier*, No. 02-1021, that an unborn fetus does not fall within the definition of "juvenile" in the Juvenile Code and that, accordingly, an unborn fetus could not be adjudicated dependent-neglected or placed in the custody of DHS.